ACCEPTED
03-16-00790-CV
14561603
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/4/2017 3:40:46 PM
JEFFREY D. KYLE
CLERK

## No. 03-16-00790-CV

## THIRD COURT OF APPEALS
## AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/4/2017 3:40:46 PM
JEFFREY D. KYLE
Clerk

Comal Trace Homeowners Association,
*Appellant*

v.

Bryan D. "Doug" Lippert, Jane Lippert, Joseph Campbell, Anita Campbell, Ronald McKinnon and Comal Trace Homeowners Advocacy Group,
*Appellee.*

### Appellees' Motion to Show Authority to Appeal, and to Dismiss Appeal for Lack of Jurisdiction

PETER L. KILPATRICK
State Bar No. 11416545
Email: pkilpatrick@langleybanack.com
ROBINSON C. RAMSEY
State Bar No. 16523700
Email: rramsey@langleybanack.com
LANGLEY & BANACK, INC.
Trinity Plaza II, Ninth Floor
745 East Mulberry
San Antonio, Texas 78212-3166
Telephone: 210.736.6600
Telecopier: 210.735.6889

ATTORNEYS FOR APPELLEES

TO THE HONORABLE THIRD COURT OF APPEALS:

Appellees JOSEPH CAMPBELL, ANITA CAMPBELL, RONALD McKINNON, COMAL TRACE HOMEOWNERS ADVOCACY GROUP ("Advocacy Group"), BRYAN D. "DOUG" LIPPERT and JANE LIPPERT ("Plaintiffs" or "Judgment Creditors") would show:

FACTUAL BACKGROUND

1.

The individual appellees are homeowners in Comal Trace, a subdivision in Bulverde, Texas in Comal County. They assert they were wrongfully denied certain improvements under the Restrictions governing the Subdivision. The restrictions are administered by Comal Trace Homeowners Association, Inc. ("CTHOA" or "HOA" herein), a Texas non-profit corporation to which all homeowners in the Subdivision are mandatory members. The HOA is the alleged appellant herein. An additional Judgment Creditor appellee Movant herein is the Advocacy Group, which is a non-profit unincorporated association consisting of more than 40 other homeowners in the Subdivision. The Advocacy Group's principal aim in the lawsuit was to address alleged illegal and secret meetings of the Board of Directors, removing members of the community from attending Board meetings in violation of the Open Meetings provisions of the Texas Property Code, and to address improper Guidelines a prior Board issued that ostensibly

added additional RV and trailer screening requirements and other land use limitations in the Subdivision without following the required procedure for amending the Restrictions by an extra-majority vote of the membership. Appellees prevailed on all of these issues and more before the Trial Court.

2.

Plaintiffs are beneficiaries and Judgment Creditors of a Final Judgment (amended) signed on August 25, 2016, including declaratory and injunctive relief against the HOA, and fees and other damages as more specifically set forth in said Final Judgment, a copy of which is in Exhibit 1 in the Appendix[1] herewith. Exhibit 1a is the jury's verdict on which the Final Judgment was based. The Final Judgment also included an award of additional conditional appellate fees to Plaintiffs and 5% interest on a total monetary award of approximately $421,000.

3.

The HOA was actively defended by Adami, Shuffield, Scheihing & Burns, P.C. (sometimes the "Adami Firm"), counsel assigned to defend the HOA by Philadelphia Indemnity Insurance Company under a reservation of rights basis.

4.

A month after the Judgment was signed, an Annual Meeting of the HOA was held in September, 2016 at which time the composition of the Board of

---

[1] The Appendix references exhibits attached to the Affidavit of Ronald "Mac" McKinnon, filed herewith.

Directors of the HOA significantly changed. Ronald "Mac" McKinnon, an individual Plaintiff who had also been a member of the Architectural Control Committee (ACC) of the HOA, was elected onto the Board by the membership of the HOA, along with 2 other new board members. Mr. McKinnon had been a Plaintiff individually and had been the Manager of the Advocacy Group that had fought to have the HOA cease certain illegal and improper activities.

5.

On August 30, 2016, Philadelphia Indemnity Insurance Company sued the HOA and the Judgment Creditors in a case styled *Philadelphia Indemnity Insurance Company v. Comal Trace Homeowners Association, Chris Eldridge, Bryan D. "Doug" Lippert, Jane Lippert, Joseph Campbell, Anita Campbell, Ronald McKinnon, and Comal Trace Homeowners Advocacy Group* in the United States District Court, Western District of Texas, Austin Division, Case No. 1:16-CV-1019, seeking a declaratory judgment that said insurance company owed nothing to the HOA or its judgment creditors by way of indemnity to the HOA.

6.

After Mr. McKinnon got on the Board, it took certain steps to remove from the deed records of Comal County certain "Guidelines" that the HOA's prior board had improperly issued as an "end run" around the requirement of an extra-majority membership vote to amend the Restrictions. See the Affidavit of Ronal Mac

McKinnon herein and Exhibit 7 in the Appendix. The invalidity of the Guidelines is just one of the issues on which Plaintiffs prevailed at trial.

7.

On November 22, 2016, attorney Tres Adami filed a Notice of Appeal and the next day filed an Amended Notice of Appeal, as if they had authority from the Board of Directors of the HOA to appeal, and to appeal on all issues in this cause. Attached hereto as Exhibit 2 are true and correct copies of such notices which purport to have been done with the authority of the Board of Directors to perfect an appeal in this cause.

8.

Although these notices of appeal were filed in the name of the HOA, the Board of Directors of the HOA did not meet to discuss and vote on appealing the Final Judgment pursuant to a regular or special meeting of the Board of Directors after notice to the membership as required by Section 209.0051 of the Texas Property Code. In fact, shockingly, at a board meeting on December 7, 2016, at which approximately 30 members of the membership were present, 3 of the 4 board members present admitted in an open forum that they did not vote for the appeal but learned of same from their attorneys after-the-fact. See Affidavit of Ronald "Mac" McKinnon.

9.

On December 23, 2016, counsel for Movants notified the HOA via its counsel that the appeal was issued without the requisite authority of the Association, and urged that the notice and amended notice of appeal be withdrawn by January 3, 2017, if authorization could not be sooner presented. *See* the letter attached hereto as Exhibit 3. However, there was no demonstration of authority or any constructive response by the HOA or its attorneys to the conference effort to avoid the filing of this Motion, thus necessitating the filing of this Motion.

ARGUMENT AND AUTHORITIES

10.

A party such as a Texas non-profit HOA must properly exercise authority before it pursues an appeal of a judgment against it. That is a decision for the Board - not to be made unilaterally by an attorney or an insurance company providing the Board a defense. The decision to appeal, and what to appeal, is a decision for the elected members of the Board of Directors. Given that the insurance company has openly asserted it will pay no indemnity to the HOA, and in light of the conditional additional appellate fees of $40,000 for which the Association will be responsible if the judgment is appealed without reversal, and given that 5% post-maturity interest accrues on the Final Judgment, whether to appeal, and what issues to appeal, are major substantive decisions that, if made,

should be made by the Board of Directors of the HOA, following notice of the meeting to the membership, in or in connection with a regular or special meeting of the Board as required by 209.0051 of the Texas Property Code. Indeed, many people believe that the HOA ought not "kick the can down the road" for the carrier merely abandon the HOA in a year or two unless the HOA has the benefit of a written opinion from the HOA's counsel demonstrating a probability of success on appeal and that it will likely not face additional liability for conditional appellate attorney's fees and post-judgment interest.

11.

The Affidavit of Mr. McKinnon, and the attachments thereto, and the absence of any notice, minutes or resolution by the Board in response to this Motion showing that the Board authorized the filing of the Notice of Appeal or the Amended Notice of Appeal, goes to the heart of whether there this Court has jurisdiction via an authorized appeal by the putative appellant. There is no such jurisdiction because there was no Board vote to appeal the Final Judgment at a meeting following notice to the membership as required by the Property Code. Indeed, as demonstrated by the attached Affidavit of Mr. McKinnon, a current member of the Board of Directors, the membership attending the December 7, 2016 meeting of the Board of Directors heard a majority of the Board members

openly admit that they had NOT voted for the appeal and only learned of the appeal after the fact.

12.

This Court of Appeals may, on affidavit or otherwise, as this Court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction. TEX. GOV'T CODE ANN sec. 22.220(c) (West 2015). Appellate courts may receive affidavits to determine questions of jurisdiction if the facts are not otherwise apparent in the record. *Jones v. Griege*, 803 S.W.2d 486, 488 (Tex. App. – Dallas 1991, no writ); *Stewart v. Texco Newspapers Inc.* 734 S.W.2d 175, 177 (Tex. App. – Houston [1st Dist.] 1987, no writ). A court of appeals may inquire about jurisdiction to determine whether jurisdiction exists or not. *Id. Liper v. Hosler*, 148 S. W. 2d 889, 894 (Tex. Civ. App – Dallas 1941, writ dism'd, judgment cor.) (per curiam) (on Mot for reh'g).

13.

In *AVE, Inc. v. Comal County*, No. 03-05-00183-CV, 2008 WL 2065857 (Tex. App.-Austin May 14, 2008, no pet.) (mem. op.), this Court of Appeals appropriately dismissed an appeal when the purported appellant's attorneys failed to show they had authority to represent the alleged appellant following questions raised whether there was authority to pursue such an appeal. This is substantially an appellate-level equivalent of a TRCP 12 motion to show authority. Therefore,

the challenged attorney has the burden of proof to show sufficient authority to represent the appellant in an appeal. *See AVE, Inc.* at 3.

## 14.

Although ordinarily an attorney who has represented the party in the trial court is presumed to have authority to pursue an appeal, that presumption is rebuttable. *Pesarra v. Seidler*, No. 01-06-01035-CVM 2008, WL 275689 (Tex. App.-Houston [1st Dist.] July 17, 2008, pet. denied) (mem. op). In *Pesarra*, the court of appeals dismissed the cause for lack of jurisdiction because the attorney did not show she had authority to represent the putative appellant. *Id.* at 5-6.

## 15.

In *Nolana Open MRI Ctr., Inc. v. Pechero*, No. 13-13-00552-CV, 2015 WL 601916 (Tex. App. – Corpus Christi Feb. 12, 2015, no pet. (mem. op.), the fundamental issue was whether one partner had authority to hire counsel to represent the company appellant when there were two equal partners and, after the appeal was abated and remanded to the trial court to consider the authority issue, it was determined that there was neither unanimous consent nor a majority vote to authorize the appeal. The court held the appellant lacked standing to bring the appeal and therefore dismissed the case for lack of jurisdiction. *Id.* at 1, 9.

16.

For these reasons, Appellees ask this Court to direct the alleged Appellant's attorney to show authority to pursue this appeal on all issues and, in the absence of such a showing, to dismiss the appeal.

Respectfully submitted,

**LANGLEY & BANACK, INC.**
Trinity Plaza II, Ninth Floor
745 East Mulberry
San Antonio, Texas 78212-3166
(210) 736-6600 – Telephone
(210) 735-6889 – Telecopier

By:_____
PETER L. KILPATRICK
State Bar No. 11416545
E-mail: pkilpatrick@langleybanack.com
ROBINSON C. RAMSEY
State Bar No. 16523700
Email: rramsey@langleybanack.com

**ATTORNEYS FOR JOSEPH CAMPBELL, ANITA CAMPBELL, RONALD ("Mac") MCKINNON, COMAL TRACE HOMEOWNERS ADVOCACY GROUP, BRYAN D. "DOUG" LIPPERT, AND JANE LIPPERT**

## CERTIFICATE OF CONFERENCE

Pursuant to Tex. R. App P. 10.1(a) (5), the undersigned sought to confer with opposing counsel per letter dated December 23, 2017 (Exhibit 6 to attached Affidavit of Ronald "Mac" McKinnon), but counsel for Appellants did not respond.

_____
PETER L. KILPATRICK


## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of January 2017, a true and correct copy of the foregoing instrument was served on counsel of record in accordance with the Texas Rules of Appellate Procedure.

Jacqueline M. Stroh
The Law Office of Jacqueline M. Stroh, P.C.
10101 Reunion Place, Suite 600
San Antonio, Texas 78216

Grant E. "Tres" Adami, III
**ADAMI, SHUFFIELD, SCHEIHING & BURNS, P.C.**
SWBC Tower
9311 San Pedro Avenue, Suite 900
San Antonio, Texas 78216

_____
PETER L. KILPATRICK or
ROBINSON C. RAMSEY

STATE OF TEXAS      §

                           §

COUNTY OF BEXAR      §

## AFFIDAVIT OF RONALD "MAC" McKINNON

BEFORE ME, the undersigned authority, on this day personally appeared Ronald "Mac" McKinnon, who, after being by me duly sworn on oath stated:

1. My name is Ronald "Mac" McKinnon. I go by Mac McKinnon. I am over 21 years old. I have personal knowledge regarding the matters below, all of which are true and correct. I have never been convicted of a felony or a misdemeanor involving moral turpitude. I am competent to make this affidavit.

2. I personally joined the lawsuit as a plaintiff in Cause No. C20141453C, *Bryan D. "Doug" Lippert, Jane Lippert, Joseph Campbell, Anita Campbell, Ronald McKinnon and Comal Trace Home Owners Advocacy Group vs. Comal Trace Homeowners Association*, in the 274th Judicial District Court of Comal County, Texas ("Trial Cause"). I was on the Architectural Control Committee (ACC) of the HOA. I joined the lawsuit as a plaintiff after I was denied a side set-back variance for a mini-garage structure on my property when others, including other ACC members, had been granted set back variances for their own structures. I was also the Manager for Plaintiff Comal Trace Home Owners Advocacy Group (Advocacy Group) from approximately September 2015 until September 2016, after which I stepped down as Manager of the Advocacy Group. The Advocacy Group is a non-profit unincorporated association that in 2016 had maintained more than 40 members who own or occupy homes in Comal Trace subdivision. A primary goal of the Advocacy Group was to promote transparency in its dealings with the membership as a non-profit HOA, avoid illegal Board meetings, promote responsible and common-sense enforcement of the land use restrictions encumbering the community, and address improper "Guidelines" that had been issued by the Board in 2014 that addressed land use regulations that, in the view of myself and many others in the Advocacy Group, improperly sought to make the land use restrictions in the subdivision more onerous by issuance of Guidelines that were not even voted on by the Board of Directors when restrictions, if amended, required an extra-majority vote of the membership. Another main goal of the Advocacy Group was to address the HOA's Board of Directors' failure to comply with the open meeting laws and to require the Board to comply with the law, and to urge the Board to stop having secret meetings of conducted without notice to the membership, and to urge the Board to cease improper "email votes" of the Board rather than voting as a Board incident to a real meeting after an opportunity for deliberative discussion and vote before the membership or, if in executive session, incident to a meeting of the Board after

which the proper announcements should be made to the membership as required by 209.0051 of the Texas Property Code.

3. On August 25, 2016, a Final Judgment was entered on the verdict in favor of Plaintiffs. See Exhibit 1 to the Appendix hereto, which is the Final Judgment. Exhibit 1-A is the verdict from the jury.

4. I have read the *Appellees' Motion to Show Authority to Appeal and to Dismiss Appeal for Lack of Jurisdiction* ("Motion" herein). The factual recitals therein are true and correct and are within my personal knowledge. The attachments to the Motion in the Appendix are true and correct copies of what they purport to be.

5. Following the trial of the Trial Cause and entry of the Final Judgment in August 2016, I ran for the Board of Directors of Comal Trace Homeowners Association ("HOA"). The Annual Meeting of the membership was in September, 2016. The pendency of the lawsuit and how the HOA had lost the trial and that the new Board should follow rather than violate the law was very much the topic of discussion at the Annual Meeting. I ran for the Board in a contested election urging that we recognize the HOA through prior board members had made many mistakes but that it was time for healing and requiring the HOA's Board of Directors to comply with the law. I was elected onto the Board of Directors at the September 2016 Annual Meeting. Under the bylaws of the Association, my vote is of no less magnitude than any other Board member of the HOA. After I was elected onto the Board by the membership, I was elected as an officer, Vice-President, by my fellow board members.

6. After I got onto the Board, I have offered to abstain on any voting as it pertains to my portion of the lawsuit, but as a duly-elected member of the Board of Directors of the HOA as of September 2016, I expect to be fully apprised of all matters affecting the HOA to whom I now owe duties under the law as a Director, and I reserve the right to speak out and reserve the right to consider against the appeal as it relates to all matters other than my own portion of the Judgment.

7. After being elected to the Board, I learned from HOA records of Defendant as a Board member that Philadelphia Indemnity Insurance Company ("Philadelphia") had previously disclosed to prior Board members that it did not recognize any obligation to indemnify any part of any judgment found against the HOA in the Trial Cause based on the pleadings in the case.

8. After I was elected to the Board, the Adami Firm filed a motion for new trial on all issues in the Trial Court without a vote by the Board of Directors. Attached hereto as Exhibit 2 is a true and correct copy of the minutes of the September 28, 2016 meeting of the Board, which was approved at the December 7, 2016 meeting of the Board, which recites how one Board member, Mr. Walker, informed those members in attendance the association's insurance company had filed for a new

trial. My complaint that the Board should have voted on that is noted in the minutes.

9. Adami, Shuffield, Scheihing & Burns, P.C. ("Adami Firm") defended the HOA at the cost of Philadelphia.

10. After I was elected to the Board, my fellow board members agreed that we would seek significant input from the membership before the Board would vote on whether to appeal the Final Judgment, after getting advice from the Adami Firm, or whether the HOA should live with the Final Judgment toward a sense of healing the community and honoring the declaratory and injunctive terms of the Final Judgment and paying out the monetary portion of the Final Judgment.

11. Whether to appeal is a major decision for the HOA. The Final Judgment has a provision for which the Association will be responsible for an estimated additional $40,000 in attorney's fees if the HOA appeals and does not prevail. Given that Philadelphia has stated they are not going to pay any portion of the Judgment, this is a big deal. The Final Judgment's monetary award of $421,000 also accrues interest at 5% per annum, or over $20,000 a year to the HOA until the monetary portion of the Judgment is paid. The very pendency of the Judgment is negatively affecting our Subdivision. Philadelphia also sued the HOA and myself and other plaintiffs in the underlying suit that led to the Final Judgment, and thus sued me and the HOA and others as Defendants in federal court in Austin seeking declaratory relief that it owes nothing to the Association by way of any insurance coverage or indemnity under the applicable Policy. As to certain items in the Final Judgment, such as the finding that the Guidelines were improperly issued by a prior Board, we as a Board have already agreed as a Board to remove such Guidelines and honor the Final Judgment in that regard. We as a Board also agreed to cease any further involvement of the law firm of Allen Stein & Durbin that cost the Association in the range of $100,000 unsuccessfully suing the Lipperts. Given these factors, unless the Adami Firm gave the Association a legal opinion that the HOA would likely succeed on appeal, although I would have been glad to consider the views of other board members (and membership attending) at a Board meeting had the issue of whether to appeal ever been submitted to the Board, I came to the conclusion as a member of the Board of Directors of the Association that if we were presented with whether to appeal the Final Judgment, it is my view that it would not in the best interest of the Association to appeal the Final Judgment. But we were never presented the decision as a Board whether to appeal.

12. On November 22, 2016, I learned a Notice of Appeal had been filed. I learned this not as a member of the Board of Directors from the Adami Firm for the HOA, as I should have, but I learned of the filing of the notice of appeal from my own personal attorney. Attached hereto in the Appendix as Exhibit 3 is the notice of appeal. I was shocked. The Board of Directors of the HOA had not met, with notice to the membership, to discuss or vote on whether to appeal. I immediately

alerted board members that the Adami Firm was pursuing an appeal in the name of the HOA WITHOUT AUTHORITY, without our discussion, and without our consent of our Board of Directors following a vote of the Directors of the Board. I am not an attorney but the notice of appeal was not limited to any particular issue but purportedly on all issues, even issues I believe the HOA through this Board of Directors has abandoned, such as the Guidelines and countersuing the Lipperts. Attached hereto as Exhibit 7 is a true and correct copy of the Comal Trace Homeowners Association Resolution Rescinding Screening Guidelines, which was filed of record in Comal County after being signed by me and other Board members. And yet the notice of appeal would also purport to assert the Trial Court's judgment was erroneous with respect that the Guidelines were invalid.

13. I asked my fellow board members on whose authority had the appeal been filed. I got no answer. I asked that the appeal be stopped so that the Board could take up and discuss and vote on whether to pursue an appeal and, if so, on what issues, after a proper notice for a meeting of the Board of Directors as well as notice as required to the homeowners (membership). As a member of the Board of Directors of the HOA, I urged a meeting and that the Adami Firm provide the Board counsel and advice regarding a number of issues and the likelihood of success of an appeal and the role of the carrier. I offered to excuse myself as to any advice as it related to my part of the judgment. I got no response. Instead, I learned that, AGAIN without authority from the HOA, the attorneys purporting to represent Comal Trace Homeowners Association had filed an Amended Notice of Appeal the following day. Attached hereto as Exhibit 4 is the amended notice of appeal. My shock was compounded that the very day after I raised these issues I was ignored again and that attorneys purporting to represent the HOA filed an amended notice of appeal with no vote by the Board or discussion with the Board of Directors. The attorney is supposed to follow the directives of the Association. Not the other way around. But in this case the attorneys for the Association filed a notice of appeal and then compounded the lack of authority by filing an amended notice of appeal without authority from the Board of Directors. It is the responsibility and duty of the HOA to determine whether to appeal and, if so, on what issues. It is not the job of the insurance company or the Adami Firm to tell us we must appeal – and on all issues.

14. On December 7, 2016, we had a valid meeting of the Board of Directors of the HOA. Attached hereto as Exhibit 5 is the agenda for the Board meeting of December 7, 2016. Four of the five Board members were present, including myself. Approximately 30 members or homeowners were also present. The focus of the meeting was to apprise the membership where we were as a community as to the lawsuit and related litigation. I complained that a motion for new trial and an appeal and a notice of appeal had been filed by the attorneys for the HOA WITHOUT a vote by the Board of Directors. Fellow board members John Hack and Stephen Walker also stated in an open forum at the Board of Directors meeting on December 7, 2016 that the appeal was done by the lawyers

or the insurance company and that they did not know about the appeal until <u>after</u> the filing of the notice of appeal.

15. Attached hereto as Exhibit 6 is a letter that I authorized my attorney to issue on December 23, 2016 to the HOA % its attorneys. As of the time of my execution of this affidavit, the attorneys for the HOA have not addressed this issue with the Board, have not rescinded the notice of appeal, or amended notice of appeal, and the Board has not issued any notice to meet to discuss the matters raised in the letter of December 23, 2016.

16. I have committed not to share or disclose any advice from my personal attorneys to the Association's attorneys, and not to disclose any advice to my personal attorney I receive as a Board member from the Association's counsel. The reality is that the Adami Firm has not responded to the Board at all as to any of my inquiries as a board member.

17. Before the notice of appeal and amended notice of appeal was filed, there was never any meeting of the Board of Directors of the HOA at which a majority of the Board of Directors voted to authorize the pursuit of an appeal on any issues, much less on all issues. There are no minutes of the HOA reflecting any vote by the Board to authorize the appeal, because there was never any such meeting by the Board of Directors.

FURTHER, AFFIANT SAYETH NOT.

_____
Ronald "Mac" McKinnon

SUBSCRIBED AND SWORN TO before me on this 30th day of December, 2016 to certify which witness my hand and seal of office.

_____
Notary Public, State of Texas

NORMA GONZALEZ
Notary Public, State of Texas
Comm. Expires 11-30-2020
Notary ID 3458305

## Appendix to Affidavit of Ronald "Mac" McKinnon

Exhibit 1:     Final Judgment dated August 25, 2016

Exhibit 1-A:  Jury Verdict

Exhibit 2:     Comal Trace Homeowners Association Board of Directors Meeting
               September 28, 2016 Minutes

Exhibit 3:     Notice of Appeal filed 11/22/2016

Exhibit 4:     Amended Notice of Appeal filed 11/23/2016

Exhibit 5:     Comal Trace Homeowners Association, Inc. Board of Directors
               Meeting December 7, 2016 Agenda

Exhibit 6:     December 23, 2016 letter to Comal Trace HOA % its lead attorneys
               of record

Exhibit 7:     Comal Trace Homeowners Association Resolution Rescinding
               Screening Guidelines

FILED
Diana Alaniz
C2014-1453C
8/31/2016 4:30:29 PM
Heather N. Kellar
Comal County
District Clerk

# Exhibit 1

CAUSE NO. C20141453C

| | | |
|---|---|---|
| BRYAN D. "DOUG" LIPPERT, JANE LIPPERT, JOSEPH CAMPBELL, ANITA CAMPBELL, RONALD "MAC" MCKINNON, AND COMAL TRACE HOME OWNERS ADVOCACY GROUP | § § § § § § | IN THIS DISTRICT COURT |
| VS. | § § § | 274ᵀᴴ JUDICIAL DISTRICT |
| COMAL TRACE HOMEOWNERS ASSOCIATION | § § | COMAL COUNTY, TEXAS |

## FINAL JUDGMENT

### (AMENDED)

This case was called for jury selection toward trial on June 6, 2016. All Plaintiffs and Comal Trace Homeowners Association, a Texas corporation ("Defendant" or "Association") appeared and proceeded to trial. A jury was summoned, qualified, and duly selected. After almost 3 ½ weeks of trial during which evidence was presented by all parties, the jury began deliberations on June 28, 2016. The jury's verdict was received on July 1, 2016. The Court signed a Final Judgment on July 29, 2016 but the Court amends same herein; as such, this supplants that Final Judgment signed on July 29, 2016. Based on the verdict of the jury, which is incorporated herein in full, and the applicable law, and the Court's disregarding the jury finding of mental anguish as to Plaintiff Joe Campbell (but otherwise separately overruling Defendant's motion for judgment notwithstanding the verdict), the Court makes the following findings and orders as part of its Final Judgment.

### THE ADVOCACY GROUP

1.     Plaintiffs Comal Trace Home Owners Advocacy Group ("Advocacy Group"), Bryan D. ("Doug") Lippert ("Doug Lippert"), Jane Lippert, Joseph ("Joe") and Anita Campbell, and Ronald "Mac" McKinnon jointly asserted various requests for declaratory and permanent

L & B 18454/0002/L1165539.DOCX/                    - 1 -

injunctive relief against Defendant Comal Trace Homeowners Association. Based on the findings of the jury, it is hereby ORDERED, ADJUDGED, and specifically DECREED under the Act as follows.

2. Since January 1, 2013, the Association has improperly held one or more meetings of its Board of Directors in a matter that has been unvalild under the law, specifically §209.0051 if the Texas Property Code. It is hereby ORDERED, ADJUDGED, and DECREED that Defendant Comal Trace Homeowners Association, Inc. and its board members and agents are PERMANENTLY ENJOINED from conducting any further meetings of its Board of Directors unless and until it has provided at least 72 hours' notice to its members or has otherwise complied with § 209.0051 of the Property Code, and said Association and its agents are PERMANENTLY ENJOINED from failing to conduct its proceedings and affairs meetings open to its membership unless justified going into executive session as narrowly set forth in of the Texas Property Code. It is further ORDERED, ADJUDGED, and DECREED that if the Board of Directors of Comal Trace Homeowners Association appropriately goes into executive session, that the Board shall reconvene in open session incident to an open meeting and make such announcements as set forth in Section §209.0051 (c) of the Texas Property Code.

3. Pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code, and consistent with the jury's verdict, it is further DECLARED that the Comal Trace Homeowners Association has failed to keep minutes for one or more board meetings from January 1, 2013, to date in violation of the organizational documents of the Association and the Property Code. Incident to and in furtherance of the granting of such declaratory relief, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant Comal Trace Homeowners Association and its board members and agents are hereby PERMANENTLY ENJOINED from conducting any

further meetings of its Board of Directors without compliance with the requirement that it keep minutes of all meetings.

4. Pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code, consistent with the jury's verdict it is further DECLARED that Comal Trace Homeowners Association's Architectural Control Committee ("ACC") has failed to keep minutes as required by Declaration and Bylaws of the Association, and has failed to place minutes in the minute books of the Association as required by the Association's bylaws. Incident to the granting of such declaratory relief, it is hereby ORDERED, ADJUDGED, and DECREED that, unless the Bylaws and Declaration are hereafter validly amended to provide otherwise, Defendant Comal Trace Homeowners Association's ACC is hereby PERMANENTLY ENJOINED from failing to keep minutes of its deliberations and decisions and causing such minutes to be placed in the minute book of the Corporation (Association).

5. Pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code, and consistent with the jury's verdict, it is further DECLARED that the Association's Board of Directors improperly approved the Guidelines, implemented or used the Guidelines. It is hereby ADJUDGED AND DECLARED that the Guidelines are void. Incident to the granting of such declaratory relief, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant Comal Trace Homeowners Association and its ACC and its agents are hereby PERMANENTLY ENJOINED from asserting the enforceability or applicability of the Guidelines issued in March, 2015 to any property encumbered by the Declaration in Comal Trace. Defendant Comal Trace Homeowners Association is hereby ORDERED forthwith to cause the permanent removal or withdrawal of the Guidelines from the real property records of Comal County, Texas.

6. Pursuant to 37.009 of the Texas Civil Practices and Remedies Code, consistent with the jury's verdict, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff Comal Trace Home Owners Advocacy Group hereby awarded $40,000.00 in reasonable, necessary, equitable and just attorneys' fees through trial against Comal Trace Home Owners Association. In addition, Plaintiff Comal Trace Home Owners Advocacy Group is additionally conditionally awarded $10,000.00 in reasonable, necessary, just and equitable fees should Defendant unsuccessfully appeal this Final Judgment for the Comal Trace Home Owners Advocacy Group to the Third Court of Appeals. By way of an additional conditional appellate award of attorneys' fees, Plaintiff Comal Trace Home Owners Advocacy Group is additionally conditionally awarded $5,000.00 in reasonable and necessary fees should the Association unsuccessfully seek review before the Texas Supreme Court.

## The Lipperts

7. Plaintiffs Bryan D. ("Doug") Lippert and Jane Lippert own property at 187 Lost Creek Drive, Bulverde, Texas, 78163 ("Lipperts' Property) for which the deed was received in evidence.

8. Based on the jury's findings, pursuant to Chapter 37 of the Civil Practices and Remedies Code (Declaratory Judgments Act), it is hereby ADJUDGED and DECLARED that the submission for the privacy fence by Plaintiffs Doug and Jane Lippert in November 2013 for an interior fence near the back of their property (so that it would be parallel to Highway 46) at the Lipperts' Property was denied in a manner that was arbitrary, capricious, and discriminatory by the Association's ACC, and is therefore void. Consequently, the Court ADJUDGES and DECLARES that Plaintiffs Doug and Jane Lippert and their successors in interest may hereafter erect and maintain a cedar panel wood privacy fence in the stead and place where the current

King Ranch style no-climb fence is located on the Lipperts' Property (in conformity with the submission or Improvement Request Form that was introduced as P-14b).

9. Plaintiffs Jane and Doug Lippert sought attorneys' fees in connection with their claims under Chapter 37 of the Texas Civil Practices & Remedies Code (Declaratory Judgments Act), for which the jury made a finding that certain fees were reasonably and appropriately incurred. In accordance with the jury's and this Court's findings, it is hereby ORDERED, ADJUDGED and DECREED that Defendant Comal Trace Homeowners Association, Inc. be and is hereby liable to Plaintiffs Doug and Jane Lippert for the sum of $168,000.00, which sum represents just, reasonable, just and equitable attorneys' fees incurred by Plaintiffs in connection with the declaratory relief sought and obtained herein through trial.

10. IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs are entitled to recover of and from Defendant Comal Trace Homeowners Association additional conditional appellate awards as follows. In addition, in the event of an unsuccessful appeal of this Final Judgment to the Court of Appeals by the Association, Plaintiffs Doug and Jane Lippert are entitled to recover an additional $10,000.00. By way of an additional conditional appellate award of attorneys' fees, Plaintiffs are entitled to an additional $5,000.00 should the Association unsuccessfully seek petition for review before the Texas Supreme Court.

11. The Association had sought per diem damages and permanent injunctive relief against Doug and Jane Lippert as Counter-Defendants asserting their placing the windscreen on the current King Ranch "no-climb fence" was a material breach of the Restrictions. It is hereby ORDERED, ADJUDGED, AND DECREED that the Association TAKE NOTHING on its counterclaims against Doug and Jane Lippert. Consequently, the claims by the Comal Trace Homeowners Association seeking a permanent injunction to remove the current King Ranch no-

climb fence or windscreen thereon are DENIED and Counter-Plaintiff shall herewith TAKE NOTHING on its counterclaims for permanent injunctive relief, attorney's fees, and statutory penalty damages in connection with its counterclaims against Doug and Jane Lippert.

12. Consistent with the jury's verdict, it is further ADJUDGED and DECREED that the Association wrongfully excluded the Lipperts from the open board of directors' meeting on January 27, 2015, and intentionally interfered with the Lipperts' peaceful use and enjoyment of the Lipperts' Property, and were defamed by the Association through its representatives or agents and/or its civil conspirators, thereby proximately causing damages to Plaintiffs Doug and Jane Lippert. Specifically, Plaintiff Jane Lippert was found by the jury to have sustained $12,500.00 in mental anguish damages and Doug Lippert was also found to have been proximately caused $12,500.00 as a result of wrongful conduct found by the jury. It is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff Jane Lippert is hereby additionally awarded **$12,500.00** against Defendant Comal Trace Home Owners Association for such mental anguish damages. It is hereby further ORDERED; ADJUDGED and DECREED that Plaintiff Doug Lippert is hereby additionally awarded **$12,500.00** against Defendant Comal Trace Home Owners Association for his mental anguish damages.

## THE CAMPBELLS

13. Plaintiffs Joseph ("Joe") Campbell and wife Anita Campbell own property in Comal Trace known as 210 Crescent Lane, Bulverde, Texas, 78163 ("Campbells' Property) for which the deed to the Campbells was received in evidence.

14. Based on the jury's findings, pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code (Declaratory Judgments Act), it is hereby ADJUDGED and DECLARED

that the manner of the Campbells' parking and keeping of their 5th wheel /RV prior to February 2015 (a photo of same is at P-208 and D-208) was compliant with the Restrictions.

15. Based on the jury's findings, pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code (Declaratory Judgments Act), it is further ORDERED, ADJUDGED, and DECREED that in the event the Campbells elect to further screen their 5th wheel/RV on their property in Comal Trace, they may do so via the screening proposals set forth in the First or Second Submission to the Association's ACC, as the jury found that the denials or failures to approve each such submission was a result of an exercise of discretionary authority in a manner that was arbitrary, capricious or discriminatory. Moreover, based on the jury's finding, and pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code (Declaratory Judgments Act), it is further ADJUDGED and DECREED that the First Submission was also "deemed approved" under the Declaration for failure by the ACC to timely take up and rule on same. As such, it is ORDERED, ADJUDGED, and DECREED that the express denials issued by the Association's management company on behalf of the Association or its ACC to Joe and Anita Campbell in connection with their First and Second Submissions are void.

16. Plaintiffs Joe and Anita Campbell sought attorneys' fees in connection with their claims under Chapter 37 of the Texas Civil Practices and Remedies Code (Declaratory Judgment Act). In accordance with the jury's findings and this Court's conclusions, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant Comal Trace Homeowners Association, Inc. is liable to Plaintiffs Joe and Anita Campbell for attorneys' fees and money damages as set forth herein. It is ORDERED, ADJUDGED, and DECREED that Plaintiffs Joe and Anita Campbell have and recover from and against Defendant Comal Trace Homeowners Association, Inc. the sum of **$102,000.00**, which sum represents just, reasonable and equitable

attorneys' fees incurred by Plaintiffs Joe and Anita Campbell in connection with the declaratory relief sought over the course of this case and obtained hereinabove. .

17.     IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs Joe and Anita Campbell are entitled to recover of and from Defendant Comal Trace Homeowners Association additional conditional appellate attorneys' fees awards as follows. In the event of an unsuccessful appeal to the Court of Appeals of this Final Judgment by the Association, Plaintiffs Joe and Anita Campbell are entitled to recover an additional **$10,000.00.** By way of an additional conditional appellate award of attorneys' fees, Plaintiffs Joe and Anita Campbell are entitled and hereby conditionally awarded an additional **$5,000.00** should the Association unsuccessfully seek a petition for review before the Texas Supreme Court.

18.     It is further ORDERED, ADJUDGED, and DECREED that the Association was negligent as against Joe and Anita Campbell that proximately caused them harm and damages. It was further found by the jury that Defendant Association via its representatives or agents and/or its civil conspirators or a combination thereof intentionally interfered with the peaceful use and enjoyment of the Campbells' Property, and defamed Joe and Anita Campbell. Specifically, Plaintiff Anita Campbell was found to have sustained mental anguish damages and additional storage costs relating to their 5th wheel as a proximate result of actionable wrongful conduct by the Association. It is hereby additionally ORDERED, ADJUDGED, and DECREED that Anita Campbell be and is hereby additionally awarded **$10,000.00** over and against Defendant Comal Trace Home Owners Association for actual damages (mental anguish damages) as a proximate result of their conduct. It is hereby ORDERED, ADJUDGED, and DECREED that Plaintiffs Joe and Anita Campbell are hereby additionally awarded **$3,000.00** over and against Defendant Comal Trace Home Owners Association in additional damages for storage charges.

## RONALD "MAC" MCKINNON

19.     Plaintiff Ronald "Mac" McKinnon owns property in Comal Trace known as 170 Alvin's Way, Bulverde, Texas, 78163 ("McKinnon's Property) for which the deed to Mr. McKinnon was received in evidence.

20.     Based on the jury's findings, and pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code (Declaratory Judgments Act), it is hereby ADJUDGED and DECREED that the denials by the Association or its ACC to deny Plaintiff McKinnon his requested structural side set back variance of 14 feet to build a 14 by 16 foot structure are hereby rendered void; specifically, pursuant to the Declaratory Judgments act it is hereby DECLARED that the Association or its ACC exercised its discretion in denying the variance in a manner that was arbitrary, capricious or discriminatory, effectively rendering the denials void and tantamount to approval for such proposed building as placed within 14 feet of the side set back as indicated in Plaintiff McKinnon's submissions.

21.     Plaintiff Ronald "Mac" McKinnon sought attorneys' fees in connection with his claims under Chapter 37 of the Texas Civil Practices and Remedies Code (Declaratory Judgment Act).  In accordance with the jury's findings and the conclusions of this Court, it is hereby ORDERED, ADJUDGED and DECREED that Defendant Comal Trace Homeowners Association, Inc. is liable to Plaintiff Ronald "Mac" McKinnon for attorneys' fees; specifically, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff Ronald "Mac" McKinnon have and recover from and against Defendant Comal Trace Homeowners Association, Inc. the sum of $51,000.00, which sum represents a just, reasonable and equitable attorneys' fees incurred by Plaintiff McKinnon in connection with the declaratory relief sought over the course of this case and obtained hereinabove.

22. IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiff Ronald "Mac" McKinnon is entitled to recover of and from Defendant Comal Trace Homeowners Association additional conditional appellate awards for attorney's fees as follows. In the event of an unsuccessful appeal to the Court of Appeals of this Final Judgment by the Association, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff Ronald "Mac" McKinnon is entitled to recover an additional **$10,000.00**. By way of an additional conditional appellate award of attorneys' fees, it is hereby additionally ORDERED, ADJUDGED, and DECREED that Plaintiff McKinnon is entitled to an additional **$5,000.00** should the Association unsuccessfully seek a petition for review before the Texas Supreme Court.

23. Consistent with the verdict, it is further ADJUDGED that Defendant Association via its representatives or agents defamed Mr. McKinnon proximately causing him damages, among other things, falsely accusing him of criminal misconduct. It is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff Ronald "Mac" McKinnon is hereby additionally awarded **$10,000.00** against Defendant Comal Trace Homeowners Association for mental anguish damages.

## MISCELLANEOUS - ALL PARTIES

24. It is FURTHER ORDERED, ADJUDGED and DECREED that all writs and processes for all Plaintiffs to enforce and collect this Final Judgment, including court costs, may issue as necessary.

25. The Court further ORDERS, ADJUDGES, and DECREES that Plaintiffs Doug and Jane Lippert, Joe and Anita Campbell, Ronald "Mac" McKinnon, and the Comal Trace Home Owners Advocacy Group are entitled to and are hereby additionally AWARDED all court

costs of court against the Defendant Comal Trace Homeowners Association, which amount is $12,473.45 owed jointly to all Plaintiffs. .

26. As to the total monetary award to all Plaintiffs awarded above, which totals **$421,473.45** (which includes court costs), it is further ORDERED, ADJUDGED, and DECREED that Plaintiffs shall have post-judgment interest at the rate of 5% per annum until said amount until paid in full, which interest obligation is hereby assessed against Defendant Comal Trace Homeowners Association, Inc. in favor of all Plaintiffs.

27. This Final Judgment is intended to be a full and final judgment disposing of all parties, claims, and causes of action tried in this cause; all relief not expressly awarded by this judgment to Plaintiffs or to Defendant/Counter-Plaintiff Comal Trace Homeowners Association is hereby DENIED in all things.

SIGNED this 25th day of August 2016

DIB WALDRIP, JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

LANGLEY & BANACK, INC.
Trinity Plaza II, Ninth Floor
745 East Mulberry
San Antonio, Texas 78212-3166
(210) 736-6600 – Telephone
(210) 735-6889 – Telecopier

By:_____
PETER L. KILPATRICK
State Bar No. 11416545

ATTORNEYS FOR PLAINTIFFS

ADAMI, SHUFFIELD, SCHEIHING &
BURNS, P.C.

By:_____
GRANT E. "TRES" ADAMI, III
State Bar No. 00845400
tadami@adamilaw.com
SWBC Tower
9311 San Pedro Avenue, Suite 900
San Antonio, Texas 78216
210-344-0500 – Telephone
210-344-7228 – Fax

ATTORNEYS FOR DEFENDANT COMAL TRACE
HOMEOWNERS ASSOCIATION


ALLEN STEIN & DURBIN, P.C.
6243 IH-10 West, Suite 700
San Antonio, Texas 78201
(210) 734-7488 – Telephone
(210) 738-8036 – Facsimile

TOM L. NEWTON, JR.
State Bar No. 14982300
ASHLEY E. GIORDANO
State Bar No. 24087589
KATIE E. FAULK
State Bar No. 24087500

ATTORNEYS FOR DEFENDANT / COUNTER-
PLAINTIFF COMAL TRACE HOMEOWNERS
ASSOCIATION

# Exhibit 1-A



CAUSE NO. C2014-1453C

| | | |
|---|---|---|
| BRYAN D. "DOUG" LIPPERT, JANE LIPPERT, JOSEPH CAMPBELL, ANITA CAMPBELL, RONALD McKINNON and COMAL TRACE HOME OWNERS ADVOCACY GROUP | § § § § § § § | IN THIS DISTRICT COURT |
| | | 274TH JUDICIAL DISTRICT |
| VS. | § § § | |
| COMAL TRACE HOMEOWNERS ASSOCIATION | § § | COMAL COUNTY, TEXAS |

## CHARGE TO JURY

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations:

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court; that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answer.

5. You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and

dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6. Unless otherwise instructed, you may answer a question upon the vote of ten or more jurors. If you answer more than one question upon the vote of ten or more jurors, the same group of at least ten of you must agree upon the answers to each of those questions.

7. The Court gives you these instructions because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

8. The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

9. When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

10. Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence unless you are otherwise instructed. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No."

11. The term **"preponderance of the evidence"** means the greater weight and degree of credible evidence admitted in this case. A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by preponderance, you must find that the fact is more likely true than not true. Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence unless you are otherwise instructed.

12. **"Restrictions"** or **"Declaration"** (sometimes called the "DCCRs" during trial) means the Declaration of Covenants, Conditions And Restrictions For Comal Trace Subdivision admitted into evidence as Exhibit P-1. "Subdivision" shall mean Comal Trace in Bulverde, Texas covered by the Restrictions.

13. **"Defendant"** or **"HOA"** or **"Association"** or **"Corporation"** means the Comal Trace Homeowners Association, including its agents and representatives and committees, including the Architectural Control Committee or "ACC" for the Subdivision.

14. **Circumstantial evidence.** A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

15.     **Ambiguity.** You are instructed that land use limitations in the Declaration which restricts the free use of land are not favored, but when they are confined to a lawful purpose and are clearly worded (unambiguous), they should be liberally enforced to give effect to its purposes and intent unless (1) waived; (2) a request should be deemed approved; or (3) a provision in the Declaration is not enforceable as set forth in this charge.   When a restrictive covenant in the Declaration may reasonably be interpreted in more than one way, it is ambiguous, and all doubts shall be resolved in favor of the free and unrestricted use of the property, strictly construing any ambiguity against the party seeking to enforce the land use restriction.

16.     **Attorney's Fees.** Factors to consider in determining the reasonableness of an attorney's fees award are:

- the time and labor involved;

- the novelty and difficulty of the questions involved;

- the skill required to perform the legal services properly;

- the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

- the fee customarily charged in the locality for similar legal services;

- the amount involved and the results obtained;

- the time limitations imposed by the client or the circumstances;

- the nature and length of the professional relationship with the client;

- the experience, reputation, and ability of the lawyer or lawyers performing the services; and

- whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

17.     Further on attorney's fees, you are instructed that the attorneys for both sides have submitted their testimony on attorneys' fees on the issue of what their clients have incurred in support of their clients' affirmative claims, doing so by written report in lieu of live in-court testimony. That testimony is disputed by the opposing party or parties, and it has no more or less weight than any other evidence admitted into evidence. You are free to give such testimony the weight, if any, as you see fit.

18.     James Seabolt, Chair or Leader of the Conservation Committee (Deer Committee) of the Association, destroyed a hard drive or placed same in the landfill after being court ordered to produce certain documents and communications with others regarding the issues in this cause. As such, he destroyed evidence or potential evidence impacting one or more issues in this cause. Consequently, you may consider that such evidence would have been unfavorable to Defendant.

19.     The term **"mental anguish"** used herein means a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

L & B 18454/0002/L1142438.DOC/                                3

20.    Unless indicated otherwise, all questions should be based on a preponderance of evidence as indicated above. However, in some questions herein, if you are directed to answer same, require a higher burden of "clear and convincing evidence" if expressly indicated. "Clear and convincing evidence" means the measure of degree of proof that produced a firm belief of the truth of the allegations sought to be established.

21.    "**Malice**," and "**gross negligence**" means as follows:

Malice means:

(a)    a specific intent by the Association to cause substantial injury to Doug Lippert; or

(b)    an act or omission by the Association,

(i)    which when viewed objectively from the standpoint of the Association at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(ii)    of which the Association has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

"**Gross negligence**" means an act or omission by a person, which (1) when viewed objectively from the standpoint of that person at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) of which that person has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

22.    "**Exemplary damages**" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages include punitive damages.

Factors to consider in awarding exemplary damages, if any, are –

a.    The nature of the wrong.

b.    The character of the conduct involved.

c.    The degree of culpability of the wrongdoer.

d.    The situation and sensibilities of the parties concerned.

e.    The extent to which such conduct offends a public sense of justice and propriety.

23. **"Negligence,"** means failure to use ordinary care; that is, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

24. **"Ordinary care"** means that degree of care that a person of ordinary prudence would use under the same or similar circumstances.

25. **"Proximate cause"** means a cause that was a substantial factor in bringing about an injury, and without which such injury would not have occurred. To be a proximate cause, the act or omission complained of must be such that a person using ordinary prudence would have foreseen that the injury, or similar injury, might reasonably result therefrom. There may be more than one proximate cause of an injury.

26. An entity acts **"arbitrarily and capriciously"** when it acts unreasonably and without reference to any guiding rules or principles, and an entity acts **"discriminatorily"** when it fails to treat all persons equally where no unreasonable distinction can be found between those favored and those not favored.

27. Do not discuss anything about this case, or even mention it to anyone whomsoever, or in the presence of others including your spouse, partner or significant other. Do not allow anyone to mention it in your hearing until you are discharged as jurors or excused from this case. The bailiff is ordered to inform me of all such reports by jurors.

28. Do not post or read about the case or subject matter of the case or persons in the case on blogs, internet news sites or social media including but not limited to Wikipedia, MySpace, Twitter or Facebook. You can post that you are on jury duty and how long you expect to be on jury duty. That is ALL you are allowed to write or text about. You cannot post anything about whether a verdict has or will be reached or when a verdict has or will be reached or announced in court.

29. Do not read or send text messages in the courtroom. Do not have cell phones, i-pads, blackberries or any other device you may use to communicate with others on while you are in the courtroom. While you are deliberating your cell phones, blackberries and any other device you may use to communicate with others will be removed from the jury room.

## QUESTION L 1

Was the ACC's exercise of discretionary authority in denying the Lipperts' request for a privacy fence in late 2013 arbitrary, capricious, or discriminatory?

Answer "Yes" or "No."

We, the jury, answer: ___Yes___

## QUESTION L 2

Was the ACC's exercise of discretionary authority, in denying the Lipperts' request for crepe myrtles in their front yard, arbitrary, capricious, or discriminatory?

Answer "Yes" or "No."

We, the jury, answer: ___No___

## QUESTION L 3

Did the Lipperts request an appeal of the ACC's denial of their requested privacy fence and crepe myrtles, and did the Association's Board of Directors fail to appropriately address the matter?

You are instructed that Article VI, Sections 8 and 9 at pages 13 and 14 of the Declaration, when read together, are ambiguous, and thus you are instructed to follow the General Instructions regarding **Ambiguity** at paragraph 15 in your consideration of this issue.

Answer "Yes" or "No."

We, the jury, answer: ___Yes___

## QUESTION L 4

Has the Defendant Association waived its right to enforce the Restrictions to prevent plantings such as the Lipperts' crepe myrtles in their front yard?

To establish waiver, the Lipperts must prove that the violations of others in the Subdivision have been allowed and are so great as to lead the mind of the average person to reasonably conclude that the restriction in question has been abandoned. In determining whether a restrictive covenant has been waived, the factors that may be considered include the number, nature, and severity of the then-existing violation(s), any prior acts of enforcement of the restrictions, and whether it is still possible to realize to a substantial degree the benefits intended through the Restriction.

Answer "Yes" or "No."

We, the jury, answer: No

## QUESTION L 5

Has the HOA waived its right, if any, to deny privacy fencing such as that requested by the Lipperts?

To establish waiver, the Lipperts must prove that the violations of others in the Subdivision have been allowed and are so great as to lead the mind of the average person to reasonably conclude that the restriction in question has been abandoned. In determining whether a restrictive covenant has been waived, the factors that may be considered include the number, nature, and severity of the then-existing violation(s), any prior acts of enforcement of the restrictions, and whether it is still possible to realize to a substantial degree the benefits intended through the Restriction.

Answer "Yes" or "No."

We, the jury, answer: No

If you answered "no" to Question L 1, Question L 3, and Question L 5, then answer Question L 6. Otherwise, do not answer Question L 6.

## QUESTION L 6

Did the Lipperts materially and substantially breach the Declaration as it relates to placing the windscreen on the "King Ranch" no-climb wire fence?

You are instructed that before you can answer "yes" to this Question, you must find that the Declaration's requirement in Article VI, Section 2 is clearly applicable to the windscreen. You are further instructed that article VI, Section 2 is ambiguous, and thus you are instructed to follow the General Instruction at Paragraph 15 regarding **Ambiguity** in your consideration of this issue.

Answer "Yes" or "No."

We, the jury, answer: N/A

If you answered Question L 6 and you answered same "yes," then answer Question L 7. If you did not answer Question L 6 or you answered Question L 6 "no," do not answer Question L 7.

Did the Association as Counter-Plaintiff have "unclean hands" that should preclude granting it an injunction to force the Lipperts to removal of the windscreen material from the fence?

You are instructed that one has "unclean hands" if Defendant and its agents' conduct in connection with such matter has been unconscientious, unjust, or marked by a lack of good faith.

Answer "Yes" or "No."

We, the jury, answer: __N/A__


**QUESTION L 8**

Was the Association's exclusion of the Lipperts from attending the Board of Directors' meeting on January 27, 2015 a proximate cause of damages to Mr. and Mrs. Lippert?

As to the exclusion, you are instructed that any provision in the Restrictions that purport to allow the Association to exclude a member from attending a board meeting based on "good standing" is void.

Answer "Yes" or "No."

We, the jury, answer: __Yes__


**QUESTION L 9**

Has the Association intentionally interfered with Doug and Jane Lipperts' right of peaceful use and enjoyment of their property, so that Mr. and Mrs. Lippert were proximately caused harm as a result?

You are instructed that property owners have the right to the peaceful use and enjoyment of their property without interference. To establish an intentional interference, the Lipperts must prove that an interference with their property rights occurred, that such interference caused them damage, and that the interference was without just cause nor was it otherwise excused. Interference is intentional if committed with the desire to interfere with property rights or with the belief that interference is substantially certain to result.

Answer "Yes" or "No."

ANSWER: __Yes__

## QUESTION L 10

Did the Association publish false, defamatory statements regarding the Lipperts to others that proximately caused Mr. or Mrs. Lippert harm?

You are instructed that "defamatory" means that an ordinary person would interpret the statement(s) in a way that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt, ridicule, or to impeach the person's honesty, integrity, virtue, or reputation. In deciding whether a statement is defamatory, you must construe the statement as a whole and in light of the surrounding circumstances, based on how a person of ordinary intelligence would perceive it. "False" means that a statement is not substantially true. "Publish" means intentionally or negligently to communicate the matter to a person other than the Lipperts who are capable of understanding its meaning. Even if the Lipperts were not specifically referenced in a statement, if in light of the overall circumstances such comments could be reasonably construed to reference the Lipperts, such a statement could be regarding or referencing the Lipperts. If one accuses another of a crime, dishonesty, or fraud, the law presumes such statements to be defamatory per se, so that damages are presumed.

Answer "Yes" or "No" as to each of the following statements:

Plaintiffs "are worthless people"                                    ANSWER: Yes

- Plaintiffs are "white trash"                                       ANSWER: No

- Plaintiff Doug Lippert accused of criminal
  misconduct of terroristic threats                                  ANSWER: Yes

- Plaintiff Doug Lippert is an "A-hole"
  and "dumb SOB"                                                     ANSWER: Yes

- Plaintiffs have engaged in crime                                   ANSWER: Yes

If you found "yes" to Question L 9, or "yes" to all or any subpart to Question L 10, then answer Question L 11.

## QUESTION L 11

Was the Association part of a conspiracy with James Seabolt and/or Richard Sommer and/or Bernadina Mickey (when she was no longer on the Board of Directors) and/or another person or persons that damaged the Lipperts by defamation or intentional interference with the Lipperts' right to peaceful use and enjoyment of their property?

For the Association to be liable for another's unlawful or tortious misconduct as part of a conspiracy, the Association and another person or persons must have knowledge of, agreed to, and intended a common objective or course of action that resulted in damage to Mr. or Mrs. Lippert. One or more persons involved in the conspiracy must have performed some act or acts

to further the conspiracy. The elements of civil conspiracy are that: 1) two or more persons; 2) with an object to be accomplished; 3) have a meeting of minds on the object or course of action; 4) which results in one or more unlawful, overt acts, and 5) damages were caused as a proximate result.

Answer "Yes" or "No."

ANSWER: Yes

If you found "yes" in answer to Questions L8, L 9, L10, or L 11, then answer Question L 12. If you found "no" in response to Questions L 8, L 9, L 10, and L 11, then do not answer Question L 12

## QUESTION L 12

What amount of money, if paid now in cash by the Association, would reasonably compensate Plaintiffs Jane and Doug Lippert for their mental anguish, if any, sustained as a result of the conduct you found in response to the "yes" answer(s) to the referenced Questions?

You are instructed that if you found "yes" to Question L 11, then, in addition to those representatives of the Association authorized by the Association to act in such manner, and any other induced by them to have engaged in such misconduct, you may consider such co-conspirators' conduct to be imputed to the Association for the purposes of this Question. If you found "no" to Question L 11, consider only those actions of Defendant via its authorized representatives. Be mindful of the instruction of mental anguish at Paragraph 19 of the general instructions.

Answer in dollars and cents as to each

Jane Lippert: We, the jury, find $ 12,500.00

Doug Lippert: We, the jury, find $ 12,500.00

If you have answered Questions L 1, L 2, L 3, L4, L5, or L 8 "yes", then answer Question L 13 regarding the attorney's fees for Mr. and Mrs. Lippert as it relates to such matters on which you provided one or more "yes" answers to the referenced Questions. Otherwise, do not answer Question L 13.

## QUESTION L 13

What is a reasonable fee for the necessary attorney's fees to compensate the Lipperts for their attorney's fees incurred in connection with such matters for which you answered "yes" to the referenced Questions?

Answer in dollars and cents, if any, for the following:

For preparation and trial          ANSWER: $ 168,000.00 ~~168,000.00~~

168,000.00

For appeal to the court of appeals          ANSWER: $ 10,000.00

For appeal to the Texas Supreme Court          ANSWER: $ 5,000.00

If you answered Question L 6 "yes," and you also answered "no" to Question L7, then answer Question L 14. Otherwise do not answer Question L14.

---

## QUESTION L 14

What is a reasonable fee for the necessary services of the Association's attorney Allen Stein & Durbin to compensate the Association in connection with its counterclaim against the Lipperts?

Answer in dollars and cents, if any, for the following:

For preparation and trial          ANSWER: $ N/A

For appeal to the court of appeals          ANSWER: $ N/A

For appeal to the Texas Supreme Court          ANSWER: $ N/A

If you unanimously answered "yes" to Questions L 8, L 9, or L 10, then answer Question L 15. Otherwise, do not answer the following Question L 15. If you answer L 15, you must answer unanimously to find "Yes", but ten (10) or more of you may answer "no."

## QUESTION L 15

Do you find by clear and convincing evidence that harm to Jane Lippert and Doug Lippert resulted from malice as to the conduct for which you have unanimously answered "yes" to the referenced Questions?

Answer "Yes" or "No"

Answer: N/A

If you unanimously answered "Yes" to Questions L 15 regarding the Association's conduct as to Jane and Doug Lippert, answer the following Question L 16, Otherwise, do not answer Question L 16.

## QUESTION L 16

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, should be assessed against the Association and awarded to Jane Lippert and/or Doug Lippert as exemplary damages?

Answer in dollars and cents, if any, as to each.

Jane Lippert:   Answer:   $ N/A

Doug Lippert:   Answer:   $ N/A

## QUESTION C 1

Was the Campbells' 5th wheel/RV being kept in compliance with the Declaration before February, 2015?

The Court has determined that the term "stored behind set back lines" is ambiguous. As such, see the General Instruction on **Ambiguity** at paragraph 15.

Answer "Yes" or "No."

We, the jury, answer: __Yes__

## QUESTION C2

Was the Campbells' First Submission for screening in February 2014 "deemed approved?"

"Deemed approved" is not an express approval but one that occurs as a matter of law under the Declaration if there is a failure to timely consider a submission as set forth in the Declaration.

Answer "Yes" or "No."

We, the jury, answer: __Yes__

## QUESTION C3

Was it arbitrary, capricious or discriminatory for the ACC to have denied the Campbells' First Submission for screening of their 5th wheel/ RV?

Answer "Yes" or "No."

We, the jury, answer: __Yes__

## QUESTION C 4

Was the Campbells' Second Submission "deemed approved?"

Answer "Yes" or "No."

We, the jury, answer: __No__

## QUESTION C 5

Was the ACC's reported denial of the Campbells' Second Submission arbitrary, capricious, or discriminatory?

Answer "Yes" or "No."

We, the jury, answer: __Yes__

## QUESTION C 6

Has the Association waived its right to enforce Article III, Section 25 of page 9 in the Declaration?

To establish waiver, the Plaintiffs must prove that the violations of others in the Subdivision have been allowed and are so great as to lead the mind of the average person to reasonably conclude that the restriction in question has been abandoned. In determining whether a restrictive covenant has been waived, the factors that may be considered include the number, nature, and severity of the then-existing violation(s), any prior acts of enforcement of the restrictions, and whether it is still possible to realize to a substantial degree the benefits intended through the Restriction.

Answer "Yes" or "No."

We, the jury, answer: __No__

If you have answered Questions C1, C2, C3, C4, C5, or C6 "Yes," then answer Question C 7 regarding the attorney's fees for the Campbells.

## QUESTION C 7

What is a reasonable fee for the necessary attorney's fees to compensate Mr. and Mrs. Campbell for their attorney's fees incurred in connection with such matters for which you answered "yes" to the referenced Questions?

Answer in dollars and cents, if any, for the following:

For preparation and trial          ANSWER: $ 102,000.00

For appeal to the court of appeals          ANSWER: $ 10,000.00

For appeal to the Texas Supreme Court          ANSWER: $ 5,000.00

## QUESTION C 8

Did the Association's negligence, if any, proximately cause harm to the Campbells?

Answer "Yes" or "No.

Answer: Yes

## QUESTION C 9

Did the Association intentionally interfere with Mr. and Mrs. Campbells' right of peaceful use and enjoyment of their property?

You are instructed that property owners have the right to the peaceful use and enjoyment of their property without interference. To establish an intentional interference, the Campbells must prove that an interference with their property rights occurred, that such interference caused them damage, and that the interference was without just cause or it being otherwise excused. Interference is intentional if committed with the desire to interfere with property rights or with the belief that interference is substantially certain to result.

Answer "Yes" or "No."

ANSWER: Yes

# QUESTION C 10

Did Chris Eldridge, acting as the President of the Association, intentionally intrude into Anita Campbell's solitude, seclusion, or private affairs or concerns in a manner that would be highly offensive to a reasonable person?

Answer "Yes" or "No."

ANSWER: Yes

If and only if you have answered "yes" to Question C 10, then answer the following Question 10 a. Otherwise, do not answer Question 10 a.

# QUESTION C 10a

Did Anita Campbell consent to Chris Eldridge's intrusion as further described in Question 10?

You are instructed that "consent" means assent in fact – whether express or apparent, and "consent" is not effective if induced by deception or coercion.

Answer "Yes" or "No."

ANSWER: Yes

# QUESTION C 11

Did Chris Eldridge, as President of the Association, trespass onto the Campbell's property?

You are instructed that in determining whether a trespass has been committed, a 'trespass' is any act which exceeds or passes beyond the bounds of any rights which have been legally granted. In determining the question of trespass, the intent of the trespasser is not a factor.

Answer "Yes" or "No."

ANSWER: No

## QUESTION C 12

Did the Association publish false, defamatory statements regarding the Campbells to others that proximately caused harm to Mr. and Mrs. Campbell?

You are instructed that "defamatory" means that an ordinary person would interpret the statement(s) in a way that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt, ridicule, or to impeach the person's honesty, integrity, virtue, or reputation. In deciding whether a statement is defamatory, you must construe the statement as a whole and in light of the surrounding circumstances, based on how a person of ordinary intelligence would perceive it. "False" means that a statement is not substantially true. "Publish" means intentionally or negligently to communicate the matter to a person other than the Campbells who are capable of understanding its meaning. Even if the Campbells were not specifically referenced in a statement, if in light of the overall circumstances such comments could be reasonably construed to reference the Campbells, such a statement could be regarding or referencing the Campbells. If one accuses another of a crime, dishonesty, or fraud, the law presumes such statements to be defamatory per se, so that damages are presumed.

Answer "Yes" or "No" as to each of the following statements:

Plaintiffs "are worthless people"         ANSWER: _Yes_

- Plaintiffs are "white trash"         ANSWER: _No_

- Plaintiffs have engaged in crime         ANSWER: _Yes_

If you answered "Yes" to Question C 9, C 11, or any subpart of Question C 12, then answer the following Question C13; otherwise, do not answer Question C13.

## QUESTION C 13

Was the Association part of a conspiracy with James Seabolt and/or Richard Sommer and/or Bernadina Mickey (when she was no longer on the Board of Directors) and/or another person or persons that harmed the Campbells by trespass, defamation or intentional interference with the Campbells right to peaceful use and enjoyment of their property?

For the Association to be liable for another's unlawful or tortious misconduct as part of a conspiracy, the Association and another person or persons must have knowledge of, agreed to, and intended a common objective or course of action that resulted in damage to Mr. or Mrs. Campbell. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy. The elements of civil conspiracy are that: 1) two or more persons; 2) with an object to be accomplished; 3) have a meeting of minds on the object or course of action; 4) which results in one or more unlawful, overt acts, and 5) damages were caused as a proximate result.

Answer "Yes" or "No."

ANSWER: _Yes_

If you answered "Yes" to Question C 8, C 9, C 12, or C 13, or you answered C 10 "yes" and C 10a "no," then answer the following Question C14; otherwise, do not answer Question C 14. Do not consider any conduct of James Seabolt in connection with C 8 if you answer same.

## QUESTION C 14

What amount of money, if paid now in cash by the Association, would reasonably compensate Joe and Anita Campbell for their damages, if any, sustained as a result of the conduct you found in the referenced Questions?

Consider the elements of damages listed below, and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss; that is, do no compensate twice for the same loss, if any.

Do not include interest on any amount of damages that you find. Consider mental anguish to date.

Answer separately, in dollars and cents, for damages, if any.

Mental anguish of Anita Campbell

ANSWER:     $ 10,000.00

Mental anguish of Joe Campbell

ANSWER:     $ 10,000.00

If you answered "Yes" to Question C 8 or C 9,     then answer the following Question C14a; otherwise, do not answer Question C14a. Do not consider any conduct of James Seabolt in connection with this Question.

## QUESTION C 14a

What amount of money, if paid now in cash by the Association, would reasonably compensate the Campbells for the cost to the Campbells of storing their 5th Wheel/RV to date.

ANSWER:     $ 3,000.00

Answer the following Question C15 only if you unanimously answered "Yes" to one or more of Questions C 8, C 9, C 11, C 12, or C 13. Otherwise, do not answer the following question. To answer "Yes" to the following Question C 15, your answer must be unanimous. Do not consider any conduct by James Seabolt in connection with C 8. You may answer "No" to Question No. C 15 only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

## QUESTION C 15

Do you find by clear and convincing evidence that Anita Campbell and Joe Campbell suffered harm as a result of malice or gross negligence?

Answer "Yes" or "No."

Answer:     N/A

Answer the following Question C 16 only if you unanimously answered "Yes" to one or more of Questions C 9, C 10 (and "no" to C 10a), C 11, C 12, or C 13 , and "Yes" to Question C 15; otherwise, do not answer Question C 16.

## QUESTION C 16

You must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, if paid now in cash, should be assessed against the Association and awarded to the Campbells as exemplary damages, if any.

Answer in dollars and cents, if any, for each of the following:

Anita Campbell     ANSWER: $ N/A

Joseph Campbell     ANSWER: $ N/A

## QUESTION M 1

Regarding Mr. McKinnon's request for a variance for his proposed structure within the structural side set back, was the ACC's exercise of discretionary authority arbitrary, capricious or discriminatory?

Answer "Yes" or "No."

We, the jury, answer: __Yes__

## QUESTION M 2

Has the Association waived its rights to enforce the Declaration relating to placement of buildings in its structural setbacks?

To establish waiver, the Plaintiff McKinnon must prove that the violations of others in the Subdivision have been allowed and are so great as to lead the mind of the average person to reasonably conclude that the restriction in question has been abandoned. In determining whether a restrictive covenant has been waived, the factors that may be considered include the number, nature, and severity of the then-existing violation(s), any prior acts of enforcement of the restrictions, and whether it is still possible to realize to a substantial degree the benefits intended through the Restriction.

Answer "Yes" or "No."

We, the jury, answer: __No__

If you have answered Questions M1 or M2 "Yes," then answer Question M 3 regarding the attorney's fees for Mr. McKinnon.

## QUESTION M 3

What is a reasonable fee for the necessary attorney's fees to compensate Mr. McKinnon for his attorney's fees incurred in connection with such matters for which you answered "yes" to the referenced Questions?

Answer in dollars and cents, if any, for the following:

| For preparation and trial | ANSWER: $ 51,000.00 |

| For appeal to the court of appeals | ANSWER: $ 10,000.00 |

| For appeal to the Texas Supreme Court | ANSWER: $ 5,000.00 |

## QUESTION M 4

Did the Association's negligence, if any, proximately cause Mr. McKinnon harm or damages?

Answer "Yes" or "No.

Answer: No

## QUESTION M 5

Did the Association intentionally interfere with Mr. McKinnon's right of peaceful use and enjoyment of his property?

You are instructed that property owners have the right to the peaceful use and enjoyment of their property without interference. To establish an intentional interference, Mr. McKinnon must prove that an interference with his property rights occurred, that such interference caused him harm or damages (not just the incurring of attorney's fees) and that the interference was without just cause or it being otherwise excused. Interference is intentional if committed with the desire to interfere with property rights or with the belief that interference is substantially certain to result.

Answer "Yes" or "No."

ANSWER: No

# QUESTION M 6

Did the Association publish to others false, defamatory statements regarding Mr. McKinnon to others that proximately caused Mr. McKinnon harm?

You are instructed that "defamatory" means that an ordinary person would interpret the statement(s) in a way that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt, ridicule, or to impeach the person's honesty, integrity, virtue, or reputation. In deciding whether a statement is defamatory, you must construe the statement as a whole and in light of the surrounding circumstances, based on how a person of ordinary intelligence would perceive it. "False" means that a statement is not substantially true. "Publish" means intentionally or negligently to communicate the matter to a person other than Mr. McKinnon who is capable of understanding its meaning. Even if Mr. McKinnon was not specifically referenced in a statement, if in light of the overall circumstances such comments could be reasonably construed to reference Mr. McKinnon, such a statement could be regarding or referencing Mr. McKinnon. If one accuses another of a crime, dishonesty, or fraud, the law presumes such statements to be defamatory per se, so that damages are presumed.

Answer "Yes" or "No" as to each of the following statements:

- Plaintiffs "are worthless people" ANSWER: _Yes_

- Plaintiffs are "white trash" ANSWER: _No_

- Plaintiffs have engaged in crime ANSWER: _Yes_

If you answered "Yes" to Question M 5 or "yes" to any subpart of M 6, then answer Question M 7; otherwise, do not answer Question M 7.

# QUESTION M 7

Was the Association part of a conspiracy with James Seabolt and/or Richard Sommer and/or Bernadina Mickey (when she was no longer on the Board of Directors) and/or another person or persons that harmed Mr. McKinnon by defamation or intentional interference with the Mr. McKinnon's right to peaceful use and enjoyment of his property?

For the Association to be liable for another's unlawful or tortious misconduct as part of a conspiracy, the Association and another person or persons must have knowledge of, agreed to, and intended a common objective or course of action that resulted in damage to Mr. McKinnon. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy. The elements of civil conspiracy are that: 1) two or more persons; 2) with an object to be accomplished; 3) have a meeting of minds on the object or course of action; 4) which results in one or more unlawful, overt acts, and 5) damages were caused as a proximate result.

Answer "Yes" or "No."

ANSWER: _No_

If you answered "Yes" to Question M 4, M 5, or M 6, then answer the following Question M 8; If you answered "no" to Questions M 4, M 5 and M 6, please do not answer Question M 8.

## QUESTION M 8

What amount of money, if paid now in cash by the Association, would reasonably compensate Mr. McKinnon for his damages, if any, sustained as a result of the conduct of the Association for which you found "yes" in the referenced Questions?

Consider the elements of damages listed below, and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss; that is, do no compensate twice for the same loss, if any.

Do not include interest on any amount of damages that you find.

Answer separately, in dollars and cents, for damages, if any.

Mental anguish that Mac McKinnon has suffered to date.

ANSWER:     $ 10,000.00

Answer the following Question M 9 only if you unanimously answered "Yes" to one or more of Questions M 4, M 5 or M 6. Otherwise, do not answer Question M 9. To answer "Yes" to the following Question M 9, your answer must be unanimous. You may answer "No" to any part of the following Question M 9 only upon a vote of ten or more jurors.

## QUESTION M 9

Do you find by clear and convincing evidence that the harm to Mr. McKinnon resulted from malice or gross negligence?

Answer "Yes" or "No."

Answer:     N/A

Answer the following Question M 10 only if you unanimously answered "Yes" to one or more of Questions M 5 or M 6 and you unanimously answered "yes" to Question M 9. Otherwise, do not answer Question M 10.

## QUESTION M 10

You must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, if paid now in cash, should be assessed against the Association and awarded to Mr. McKinnon as exemplary damages, if any.

Answer in dollars and cents, if any, for each of the following:

ANSWER: $ __N/A__

"A" Questions Relate to Claims by the Comal Trace Home Owners
Advocacy Group and other Plaintiffs regarding governance and
related issues whether the Association's practices are compliant with the law

## QUESTION A 1

Since January 1, 2013, has the Association held one or more Board Meetings in a manner that was invalid under the law?

You are instructed that a valid board meeting is a deliberation between a quorum of the members of Board of Directors of the Association or a meeting of a quorum of the Board and another person during which the business of the Association is taken up and the board takes formal action.

For a meeting of the Board of Directors to be valid, the members (lot owners such as individual Plaintiffs and all other home or lot owners in the Subdivision) must be given notice of the date, hour, place, and general subject of a regular or special board meeting, including a general subject of a regular or special board meeting, including a general description of any matter to be brought up for deliberation in executive session. The notice for meetings of the Board of Directors must be:

(1) mailed to each property owner not later than the 10th day or earlier than the 60th day before the date of the meeting, or

(2) provided at least 72 hours before the start of the meeting by:

A) posting the notice in a conspicuous manner reasonably designed to provide notice to property owners' association members

    i)      in a place located on the Association's common property or, with the property owner's consent, on other conspicuously located property within the subdivision; or

    ii)      on any Internet website maintained by the Association or other Internet media; and

B) sending the notice by e-mail to each owner who has registered an email address with the Association

You are further instructed that before there is a valid board meeting of the Association it must meet in Comal County or in an adjacent county and have an opportunity to contemporaneously deliberate before its members (unless properly in executive session) before voting on any Association matters. However, it is not required for the Board to meet in person in all circumstances; a board meeting can be conducted by electronic or telephonic means provided that all 3 of the following requirements are met:

1) each board member may hear and be heard by every other board member, and

2) except for any portion of the meeting conducted in executive session:

A: all owners in attendance at the meeting may hear all board members; and

B: owners are allowed to listen using any electronic device or telephonic communication method used or expected to be used by a board member to participate; *and*

3) the notice of the meeting includes instructions for owners (members of the Association) to access any communication method required to be accessible under 2 B above,

Additionally, in order for there to be a valid board meeting, it must be open to the members of the Association, subject to the right of the board to go into executive session involving personnel, pending or threatened litigation, contract negotiations, enforcement actions, and confidential communications with the Association's attorney or matters that are to remain confidential by request of the affected parties. Following an executive session, any decision made in the executive session must be summarized orally and placed in the minutes in general terms, without breaching the privacy of individual owners, violating any privilege, or disclosing information that was to remain confidential at the request of the affected parties.

Answer "Yes" or "No."

We, the jury, answer: __Yes__

## QUESTION A 2

Has the Association failed to keep minutes for one or more of its board meetings from January 1, 2013, forward?

You are instructed that the law requires the Association's Board to keep a record of each regular and special meeting of the Board of Directors of the Association in the form of written minutes of the meeting.

Answer "Yes" or "No."

We, the jury, answer: __Yes__

## QUESTION A 3

Do you find that the Association's Board of Directors has the authority to reverse a decision by the ACC?

You are instructed that Article VI, Sections 8 and 9 at pages 13 and 14 of the Declaration, when read together, are ambiguous and thus you are instructed to follow paragraph 15 in the General Instructions regarding **Ambiguity** in your consideration of this issue.

Answer "Yes" or "No."

We, the jury, answer:  No

## QUESTION A 4

Do you find that the Association's ACC has regularly failed to keep minutes of its proceedings and place them in the minute books of the Corporation?

You are instructed that admissions of a party cannot be controverted.

Answer "Yes" or "No"

We the jury answer  Yes

## QUESTION A 5

Do you find that the Association's Board of Directors improperly approved the Guidelines?

Answer "Yes" or "No."

We, the jury, answer:  Yes

## QUESTION A 6

Do you find that the Association has improperly implemented or used the Guidelines?

Answer "Yes" or "No."

We, the jury, answer:  Yes

## QUESTION A 7

Do you find that that the proxy issued by the Association at the September 2015 Annual Meeting was improper?

Answer "Yes" or "No."

We, the jury, answer: __No__

---

If you answered one or more of the Questions A 1 to A 7 "yes," please answer Question A 8.
If you answered "no" to all of Questions A 1 through A 7, do not answer Question A 8.

## QUESTION A 8

What is a reasonable fee for the necessary attorney's fees to compensate   Comal Trace Home Owners Advocacy Group and all other individual Plaintiffs for their attorney's fees incurred in connection with such matters for which you answered "yes" to the referenced Questions?

Answer in dollars and cents, if any, for the following:

| | |
|---|---|
| For preparation and trial | ANSWER: $ 40,600.00 |
| For appeal to the court of appeals | ANSWER: $ 10,000.00 |
| For appeal to the Texas Supreme Court | ANSWER: $ 5,000.00 |

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do, if a majority of the jury so determines, is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror—

1. to preside during your deliberations;

2. to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

3. to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge;

4. to vote on the questions;

5. to write your answers to the questions in the spaces provided; and

6. to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

DIB WALDRIP, JUDGE PRESIDING

# CERTIFICATE

We, the jury, have answered the above and foregoing **Lippert "L"** questions as herein indicated, and herewith return same into court as our verdict.

I certify that the jury was unanimous in answering the following questions:

Answer "All" or list questions: L-2, L-3, L-4, L-5, L10-1, L10-2, L10-3, L10-4, L13-2, L13-3

_____
PRESIDING JUROR

Printed Name of Presiding Juror:

Kim Goodwin

(If the answers to some questions were not unanimous,
the jurors who agreed to those answers must certify as follows:)

We agree to the answers to the following **Lippert "L"** questions:
L1, L8, L9, L10-5, L11, L12-1, L12-2, L13-1,

Jurors' Printed Names:

PATRICK J. BIEN

Susan M. Hart

Stephanie Shaw

MATTHEW LEINER

Lauren Shelton

Suzanne Denton

Edith R. Aldridge

Henriqueta Martinez

Mia Guerra

Eulah M. Matthews

## CERTIFICATE

We, the jury, have answered the above and foregoing **Campbell "C"** questions as herein indicated, and herewith return same into court as our verdict.

I certify that the jury was unanimous in answering the following questions:

Answer "All" or list questions:  C2, C4, C6, C7-2, C7-3, C10a, C11  
C12-1, C12-2, C14a

_Kim Goodin_  
PRESIDING JUROR

Printed Name of Presiding Juror:

_Kim Goodwin_

(If the answers to some questions were not unanimous,  
the jurors who agreed to those answers must certify as follows:)

We agree to the answers to the following **Campbell "C"** questions:  
C1, C3, C5, C7-1, C8, C9, C10, C12-3, C13, C14-1, C14-2

Jurors' Printed Names:

| Signature | Printed Name |
|---|---|
| _Patrick J. Bien_ | PATRICK J. BIEN |
| | SUSAN M. HART |
| | Stephanie Shaw |
| | MATTHEW LEHNER |
| _Lauren Shelton_ | Lauren Shelton |
| _Suzanne Denton_ | Suzanne Denton |
| _Edith R. Aldridge_ | Edith R. Aldridge |
| _Henriqueta Martin_ | Henriqueta Martinez |
| _Mia Guerra_ | Mia Guerra |
| | Eulah M. Matthews |

# CERTIFICATE

We, the jury, have answered the above and foregoing **McKinnon "M"** questions as herein indicated, and herewith return same into court as our verdict.

I certify that the jury was unanimous in answering the following questions:

Answer "All" or list questions: _M1, M2, M3-1, M3-2, M3-3, M6-1, M6-3, M8,_

_Kim Goodwin_
PRESIDING JUROR

Printed Name of Presiding Juror:

_Kim Goodwin_

(If the answers to some questions were not unanimous,
the jurors who agreed to those answers must certify as follows:)

We agree to the answers to the following **McKinnon "M"** questions:

_M4, M5, M6-2, M7,_

Jurors' Printed Names:

| | |
|---|---|
| _Kim Goodwin_ | Kim Goodwin |
| _Shelley Turpin_ | Shelley Turpin |
| | Stephanie Shaw |
| | MATTHEW LEMER |
| _Lauren Shelton_ | Lauren Shelton |
| _Suzanne Denton_ | Suzanne Denton |
| _Edith R Aldridge_ | Edith R. Aldridge |
| _Henriqueta Martinez_ | Henriqueta Martinez |
| | Mia Guerra |
| | Eulah M. Matthews |

# CERTIFICATE

We, the jury, have answered the above and foregoing Advocacy "A" questions as herein indicated, and herewith return same into court as our verdict.

I certify that the jury was unanimous in answering the following questions:

Answer "All" or list questions: _A-1, A-2, A-4, A-5, A-6, A8-2, A8-3_

_Ken Goodwin_
PRESIDING JUROR

Printed Name of Presiding Juror:

_Kim Goodwin_

(If the answers to some questions were not unanimous,
the jurors who agreed to those answers must certify as follows:)

We agree to the answers to the following Advocacy "A" questions:
A3, A7, A8-1

Jurors' Printed Names:

| | |
|---|---|
| _Ken Goodwin_ | Kim Goodwin |
| _Shelley Turpin_ | Shelley Turpin |
| _[signature]_ | Stephanie Shaw |
| _[signature]_ | MATHEW LEINER |
| _Lauren Shelton_ | Lauren Shelton |
| _Suzanne Denton_ | Suzanne Denton |
| _Edith R. Aldridge_ | Edith R. Aldridge |
| _Henriqueta Martinez_ | Henriqueta Martinez |
| _[signature]_ | Mia Guerra |
| _[signature]_ | Eula M. Matthews |

Exhibit 2

COMAL TRACE HOMEOWNERS ASSOCIATION
BOARD OF DIRECTORS MEETING
SEPTEMBER 28, 2016
MINUTES

I.      CALL TO ORDER
        The meeting of the Board of directors of the Comal Trace Homeowners Association was
        called to order at 6:30 p.m. by Mr. Steve Walker.

II.     INTRODUCTIONS
        Mr. Walker introduced the members of the Board, Mr. Ronald "Mac" McKinnon, Ms. Lacie
        Orsak, Mr. Dan House, Mr. John Hack and Ms. Cathy Williams with DAMC, the management
        company.

III.    ELECTION OF OFFICERS
        Mr. Walker – President; Mr. McKinnon - Vice President, Ms. Orsak - Treasurer; Mr. Hack –
        Secretary; and Mr. House – Vice President-at-large.

IV.     ARCHITECTURAL COMMITTEE POSITION
        • With the resignation of Mr. Sommers and Mr. McKinnon the Board asked for
          volunteers to sit on the ACC committee. There were four members who have
          volunteered. The Board will review and make a decision and announce the
          appointments at the next meeting. Those who volunteered are: Mr. J.R. Smith, Mr.
          Ron Masella, Mr. Doug Lippert and Mr. Chris Venable.
        • A member asked if the Heights and Trace ACC's could be combined into one. Mrs.
          Ruth Crouch explained the developer established the ACC for the Heights as a
          separate committee.

V.      WEBSITE
        • Mr. Jay Craig resigned as webmaster at the annual meeting. Mr. Dirk Uys, has
          volunteered to serve as webmaster. He and his wife owned a website design
          company for many years. Mr. Uys will be notified of the appointment.
        • It was suggested that a form be added to the assessment notice for access to the
          website and DAMC portal.

VI.     LAWSUIT UPDATE
        • Mr. Walker informed those members in attendance the associations insurance
          company has filed for a new trial. The judge has up to 75 days to make a
          determination as to whether it will be accepted. If so, it could take up to two years or
          longer to put on the docket.
        • Mr. McKinnon stated the Board should have been consulted about the filing of the
          new trial.
        • Any information that can be disseminated to the owners will be put on the website.

VII.    SET DATE FOR NEXT MEETING
        The next meeting of the Board will be October 12, 2016 and will be an executive session.

**VIII.** **ADJOURNMENT**
With no further business to come before those assembled the meeting was adjourned at 7:35 p.m.

Approved: _____  Respectfully Submitted,

Date:_____  Cathy Williams, Recording Secretary

# Exhibit 3

Lynda Lipke

FILED
C2014-1453C
11/22/2016 3:42:50 PM
Heather N. Kellar
Comal County
District Clerk

## CAUSE NO. C20141453C

| | | |
|---|---|---|
| BRYANT D. "DOUG" LIPPERT, | § | IN THE DISTRICT COURT |
| JANE LIPPERT, JOSEPH | § | |
| CAMPBELL, RONALD McKINNON | § | |
| and COMAL TRACE HOME | § | |
| OWNERS ADVOCACY GROUP | § | |
| | § | |
| VS. | § | 274TH JUDICIAL DISTRICT |
| | § | |
| COMAL TRACE HOMEOWNERS | § | |
| ASSOCIATION | § | COMAL COUNTY, TEXAS |

## NOTICE OF APPEAL

COMES NOW, COMAL TRACE HOMEOWNERS ASSOCIATION, Defendant in the above-entitled and numbered cause, and timely files this, its Notice of Appeal, pursuant to Texas Rules of Appellate Procedure 25.1 and 26.1(a). The trial court, as well as the case's trial court number and style, are identified above.[1] Defendant desires to appeal to the Third Court of Appeals, sitting in Austin, from the Amended Final Judgment signed on August 25, 2016,[2] including all adverse rulings and orders that merged into that final judgment, as well as all adverse post-trial and post-judgment rulings and orders, including but not limited to the denial of Defendant's Partial Motion for Judgment Notwithstanding the Verdict or in the Alternative to Disregard Jury

---

[1] The presiding judge of the 274th Judicial District Court is the Honorable Gary Steel. The original and amended judgments and the orders denying Defendant's partial motion for judgment notwithstanding the verdict or in the alternative to disregard jury findings and denying Defendant's motion for new trial and remittitur were signed by the Honorable Dibrell Waldrip, presiding judge of the 433rd Judicial District Court, Comal County, Texas.

[2] The Amended Final Judgment supplanted the Final Judgment signed on July 29, 2016. To the extent necessary, Defendant notes its desire to appeal from the Final Judgment signed on July 29, 2016 as well.

Findings by written order signed July 29, 2016 and of Defendant's Motion for New Trial and Remittitur by written order signed on November 3, 2016.

Respectfully submitted,

ADAMI, SHUFFIELD, SCHEIHING & BURNS, P.C.
9311 San Pedro, Suite 900
San Antonio, Texas 78216
Telephone: (210) 344-0500
Facsimile: (210) 344-7228

By:    /s/ Grant E. Adami, III
        Grant E. Adami, III
        State Bar No. 00845400
        tadami@adamilaw.com

ATTORNEYS FOR THE DEFENDANT, COMAL TRACE HOMEOWNERS ASSOCIATION

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing notice of appeal was served via the electronic service provider on the following counsel of record in accordance with the Texas Rules of Civil Procedure on this, the 22nd day of November, 2016:

Peter L. Kilpatrick
Paul C. Boston
Langley & Banack, Inc.
Trinity Plaza II, Ninth Floor
745 East Mulberry
San Antonio, Texas 78212-3166
*Attorneys for Plaintiffs*

    /s/ Grant E. Adami, III
    Grant E. Adami, III

2

**Exhibit 4**

FILED      Lynda Lipke
C2014-1453C
11/23/2016 10:07:44 AM
Heather N. Kellar
Comal County
District Clerk

## CAUSE NO. C20141453C

| | | |
|---|---|---|
| BRYANT D. "DOUG" LIPPERT, | § | IN THE DISTRICT COURT |
| JANE LIPPERT, JOSEPH | § | |
| CAMPBELL, ANITA CAMPBELL, | § | |
| RONALD MCKINNON and COMAL | § | |
| TRACE HOME OWNERS ADVOCACY | § | |
| GROUP | § | |
| | § | |
| VS. | § | 274TH JUDICIAL DISTRICT |
| | § | |
| COMAL TRACE HOMEOWNERS | § | |
| ASSOCIATION | § | COMAL COUNTY, TEXAS |

## AMENDED NOTICE OF APPEAL

COMES NOW, COMAL TRACE HOMEOWNERS ASSOCIATION, Defendant in the above-entitled and numbered cause, and timely files this, its Amended Notice of Appeal, pursuant to Texas Rules of Appellate Procedure 25.1 and 26.1(a). The trial court, as well as the case's trial court number and style, are identified above.[1] Defendant desires to appeal to the Third Court of Appeals, sitting in Austin, from the Amended Final Judgment signed on August 25, 2016,[2] including all adverse rulings and orders that merged into that final judgment, as well as all adverse post-trial and post-judgment rulings and orders, including but not limited to the denial of Defendant's Partial Motion for Judgment Notwithstanding the Verdict or in the Alternative to Disregard Jury

---

[1] The presiding judge of the 274th Judicial District Court is the Honorable Gary Steel. The original and amended judgments and the orders denying Defendant's partial motion for judgment notwithstanding the verdict or in the alternative to disregard jury findings and denying Defendant's motion for new trial and remittitur were signed by the Honorable Dibrell Waldrip, presiding judge of the 433rd Judicial District Court, Comal County, Texas. This Amended Notice of Appeal is being filed to correct the omission of Anita Campbell from the case's style.

[2] The Amended Final Judgment supplanted the Final Judgment signed on July 29, 2016. To the extent necessary, Defendant notes its desire to appeal from the Final Judgment signed on July 29, 2016 as well.

Findings by written order signed July 29, 2016 and of Defendant's Motion for New Trial

and Remittitur by written order signed on November 3, 2016.

Respectfully submitted,

ADAMI, SHUFFIELD, SCHEIHING & BURNS, P.C.
9311 San Pedro, Suite 900
San Antonio, Texas 78216
Telephone: (210) 344-0500
Facsimile: (210) 344-7228

By:_____/s/ Grant E. Adami, III_____
Grant E. Adami, III
State Bar No. 00845400
tadami@adamilaw.com

ATTORNEYS FOR THE DEFENDANT, COMAL
TRACE HOMEOWNERS ASSOCIATION

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing amended notice of appeal was served via the electronic service provider on the following counsel of record in accordance with the Texas Rules of Civil Procedure on this, the 23rd day of November, 2016:

Peter L. Kilpatrick
Paul C. Boston
Langley & Banack, Inc.
Trinity Plaza II, Ninth Floor
745 East Mulberry
San Antonio, Texas 78212-3166
*Attorneys for Plaintiffs*

_____/s/ Grant E. Adami, III_____
Grant E. Adami, III

# Comal Trace Homeowners Association, Inc.
## Board of Directors Meeting
### Spring Branch Library
### December 7, 2016
### 6:00 PM-7:30 PM
### Agenda

I.   Call to Order
II.  Approval of Minutes
        September 28, 2016
III. Budget Approval
        a. Increase Assessments by 10%
IV.  Status of Legal Issues
V.   Discussion
VI.  Adjournment 7:30 pm

Exhibit 6



**PETER L. KILPATRICK**
BOARD CERTIFIED - CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

## LANGLEY & BANACK
INCORPORATED
Attorneys and Counselors at Law

E-MAIL: pkilpatrick@langleybanack.com

December 23, 2016

Mr. Grant E. "Tres" Adami, III          Via Fax: 210-344-7228
Mr. Jarrod Burns
**Adami, Shuffield, Scheihing & Burns, P.C.**
SWBC Tower
9311 San Pedro Avenue, Suite 900
San Antonio, Texas 78216

Dear Comal Trace Homeowners Association % its Lead Attorneys of Record:

The Board did not meet to vote in a regular or special meeting, with notice to the membership, whether to appeal the Final Judgment. I attended the December 7 meeting of the Board of Directors, at which 3 of the 4 board members present admitted in an open forum to the homeowners that the insurance company or its lawyers decided on their own to appeal without any advance notice to or vote by the Board of Directors of the Association. The Board indicated it learned after-the-fact that the notice and amended notice to appeal had been filed.

The Board should vote in a regular or special meeting after an opportunity for deliberation among board members, after giving notice to the membership of such meeting. By admission of the majority of the Board, that did not occur. The appeal was not authorized.

From the comments made by the membership at the September 2016 Annual Meeting, the membership had "had enough" and wanted to put the lawsuit behind them, comply with the law, and begin a healing process. The membership then proceeded to vote Mr. McKinnon onto the Board knowing he is a Plaintiff/Judgment Creditor individually in the lawsuit. Mr. McKinnon was voted to the Board after he spoke of recognizing and moving beyond the prior mistakes of the prior Board. A dozen or more other Advocacy Group members unapologetically stood up at the Annual Meeting to identify themselves that they felt the Association, through the prior Board, had not acted appropriately. Yet two months later on November 22, 2016, I received a Notice of Appeal – and then the next day an amended Notice of Appeal – initiating an appeal on all issues in the case.

Appealing on all issues broadcasts a position by the Association – through the current Board of Directors – that the Association seeks a reversal and retrial of the case to reassert a previously-failed counterclaim against the Lipperts that sought money and penalties against the Lipperts, and that the Association wants to challenge the findings of the jury adopted by the

TRINITY PLAZA II • 745 EAST MULBERRY, STE 900
SAN ANTONIO, TEXAS 78212 • T 210.736.6600 • F 210.735.6889
WWW.LANGLEYBANACK.COM

SAN ANTONIO • CARRIZO SPRINGS • EAGLE PASS • KARNES CITY • CASTROVILLE • NEW BRAUNFELS

L & B 18454/0002/L1219308.DOCX/          MERITAS® LAW FIRMS WORLDWIDE

Judge that the Guidelines were improperly issued and are of no effect. Such appeal, undertaken in the name of the Association but without authority of a Board vote, also asserts that the Association wishes to seek a new trial to assert that the Campbells' RV was substantially in view from the street and that their screening proposals were appropriately and timely rejected, that the Lipperts' privacy fence should be barred (even though privacy fencing is not barred at all in the Restrictions as they were erroneously told, and even though privacy fencing was previously approved by the Association and the Lipperts have compelling reasons to erect a privacy fence), that the HOA wishes to reassert that Mac's side set-back should be denied even though the ACC passed out setback variances like candy to others and themselves in the same time frame, and that the HOA wishes to continue attempting to defend the prior secret board meetings and email votes as not being improper under the Property Code, as well as challenging the judgment in all other respects.

At the last Board meeting it was stated that the Guidelines were abandoned by the Board and that it had directed their attorney to remove the Guidelines from the deed records, but yet the appeal filed in the name of the Association would urge a position by this current Board in support of the Guidelines having been properly issued by the prior Board in the first place, literally having this Board speaking out of both sides of its mouth at sane time on this issue if one engaged in the fiction that the appeal was authorized.

After the comments of the membership at the Annual Meeting, my clients and many Advocacy Group members are bewildered that this Board, *if* it lawfully voted to pursue the appeal on all issues, would want to reassert and continue the positions and folly of the past by prior members of the Board.

The final amended judgment was entered in August 2016 after your attorneys' many unsuccessful motions sought to prevent its entry. There was ample time for the Board to meet, with notice to the community as required, to discuss (with its counsel in executive session if it so desired) and vote on whether to pursue an appeal on all or part of the issues in the case, after any membership input at a Board meeting. In light of one of your insurance companies (Philadelphia Indemnity) telling you it was not providing you *any* indemnity, the continued accrual of post-judgment, and the additional conditional appellate awards to Plaintiffs, many feel the community should deal with this issue now rather than "kick the can down the road" only to see the hole the prior Board dug become even deeper for the community compounded with property values of its members potentially being negatively affected.

If the Board members who spoke up to the membership on December 7, 2016 (saying they did not vote for an appeal but learned about it afterwards) are mistaken and it is your understanding that there was a meeting and vote of the Board at such meeting to pursue an appeal prior to the filing of the Notice and Amended Notice of Appeal, please let me know by January 3, and provide me copies of the Board meeting notice and minutes at which this was taken up and voted on in a Board meeting following notice to the membership. Such materials were not produced to date in connection with statutory records requests. Otherwise, it is my clients and other Advocacy Group members' positions that the notice and amended notice of

appeal was filed without authority from the Association's Board of Directors pursuant to a validly-called meeting and vote. Such notice of appeal and amended notice of appeal should be immediately withdrawn as it was filed without authority. Please provide the withdrawal of the Notice of Appeal or requested documentation by January 3, 2017. If any Association board member seeks to meet after this letter to try to ratify the prior filing of the appeal, that would be improper in our clients' view as the authorization was needed when the appeal was filed. Further, given Philadelphia's position it won't pay a penny of the Judgment against you, and another carrier who has not accepted responsibility, I have clients who believe any board member voting for an appeal under these circumstances would be breaching their fiduciary duties each board member owes to the community (Association) unless the Board enjoys a written legal opinion from its professionals that it will more likely than not prevail in the appeal and obtain a reversal. The Board is admonished that if it voted for an appeal or purports to vote for an appeal after-the-fact in response to this letter, the name of each board member voting for the appeal needs to be plainly revealed in the board's minutes, and whether that board member wishes to pursue an appeal on all issues.

The Board was supposed to make the decision whether to appeal – with advice from your counsel – before the notice of appeal was filed in your name. Neither the Association's insurance company (especially one suing the Association in a separate federal suit asserting it owes no indemnity whatsoever to the Association) nor attorneys engaged by such insurance company to defend the Association can appropriately make substantive decisions for the Association such as filing a Notice of Appeal. They can certainly give you advice, but it is the validly-elected Board should make such decisions for the Association, not the insurance company or its lawyers. Even though paid for by your insurance company, the attorneys' legal obligations are supposed to run to you. They work for you. Not the other way around.

Please do your job and not abdicate it to others.

My clients have not ruled out accepting a payment plan on part of the monetary portion of the judgment that the insurance companies refuse to pay on your behalf. However, incredibly, neither the Association nor any carrier or representative on its behalf has offered to compromise the monetary claims to date. Nor has the prior board or you ever offered to approve and stop challenging the requested improvements for the Plaintiffs.

Thank you for your attention to these important matters to our clients.

Sincerely,

LANGLEY & BANACK, INC.

Peter L. Kilpatrick

cc: Clients

# Exhibit 7



201606043456 11/14/2016 03:18:36 PM 1/4



## COMAL TRACE HOMEOWNERS ASSOCIATION
## RESOLUTION RESCINDING SCREENING GUIDELINES

STATE OF TEXAS          §
                        §          KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF COMAL         §

By their signatures below, the Board of Directors of the Association certify that the Board of Directors has rescinded, and does hereby officially act to confirm such rescission, of the screening guidelines adopted by the Board of Directors and the Architectural Control Committee.

The foregoing Resolution was approved by the Board of Directors at a duly called meeting at which a quorum of Directors was present, as certified by the signatures of all Directors below.

Thus resolved this 3rd day of November, 2016.

COMAL TRACE HOMEOWNERS ASSOCIATION,
a Texas non-profit corporation

By:      Steve Walker, President

By:      John Hack, Secretary

By:      Ronald McKinnon, Vice President

By:      Lacy Orsak, Treasurer

By:      Daniel House, Director

STATE OF TEXAS §
§
COUNTY OF COMAL §

Before me, the undersigned notary public, on this day personally appeared Steve Walker, acting on behalf of Comal Trace Homeowners Association, known to me or proved to me by presentation to me of a governmentally-issued identification card to be one of the persons whose name is subscribed to the foregoing instrument, and acknowledged to me he executed it for the purposes and consideration expressed in it.

Given under my hand and seal of office the 3rd day of November, 2016.



Notary Public, State of Texas

Yvonne M Lopez
My Commission Expires
07/16/2017

STATE OF TEXAS §
§
COUNTY OF COMAL §

Before me, the undersigned notary public, on this day personally appeared John Hack, acting on behalf of Comal Trace Homeowners Association, known to me or proved to me by presentation to me of a governmentally-issued identification card to be one of the persons whose name is subscribed to the foregoing instrument, and acknowledged to me he executed it for the purposes and consideration expressed in it.

Given under my hand and seal of office the 3rd day of November, 2016.

Notary Public, State of Texas

Yvonne M Lopez
My Commission Expires
07/15/2017

2

STATE OF TEXAS            §
                         §
COUNTY OF COMAL          §


    Before me, the undersigned notary public, on this day personally appeared **Ronald McKinnon**, acting on behalf of Comal Trace Homeowners Association, known to me or proved to me by presentation to me of a governmentally-issued identification card to be one of the persons whose name is subscribed to the foregoing instrument, and acknowledged to me he executed it for the purposes and consideration expressed in it.

    Given under my hand and seal of office the 3rd day of November, 2016.



Yvonne M Lopez
My Commission Expires
07/15/2017

_____
Notary Public, State of Texas


STATE OF TEXAS            §
                         §
COUNTY OF COMAL          §


    Before me, the undersigned notary public, on this day personally appeared Lacy Orsak, acting on behalf of Comal Trace Homeowners Association, known to me or proved to me by presentation to me of a governmentally-issued identification card to be one of the persons whose name is subscribed to the foregoing instrument, and acknowledged to me she executed it for the purposes and consideration expressed in it.

    Given under my hand and seal of office the 3rd day of November, 2016.

Yvonne M Lopez
My Commission Expires
07/15/2017

_____
Notary Public, State of Texas

3

STATE OF TEXAS       §
                                  §

COUNTY OF COMAL     §

        Before me, the undersigned notary public, on this day personally appeared Daniel House, acting on behalf of Comal Trace Homeowners Association, known to me or proved to me by presentation to me of a governmentally-issued identification card to be one of the persons whose name is subscribed to the foregoing instrument, and acknowledged to me he executed it for the purposes and consideration expressed in it.

        Given under my hand and seal of office the 3rd day of November, 2016.



Yvonne M Lopez
My Commission Expires
07/16/2017

Notary Public, State of Texas

**AFTER RECORDING RETURN TO:**
Comal Trace Homeowners Association
c/o Diamond Association Management & Consulting
6391 DeZavala Road, Suite 223D
San Antonio, TX 78239

5537001/1453459

Filed and Recorded
Official Public Records
Bobbie Koepp, County Clerk
Comal County, Texas
11/14/2016 03:18:36 PM
CHRISTY 4 Page(s)
201606043456

Bobbie Koepp

4